UNITED STATES of America,
Plaintiff,

v.

Searcy Baker ANDREWS, aka, Satch,
Andy, Doc, Doctor, Searc, et al.,
Defendants.

Cr No. 75–843–CBR.

United States District Court,
N. D. California.

Feb. 2, 1976.

James L. Browning, Jr., U. S. Atty., John C. Gibbons, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Jonathan Lappen, Beverly Hills, Cal., for Green.

John W. Keker, San Francisco, Cal., for Chas. Johnson.

Michael H. Weiss, San Francisco, Cal., for Robert Andrews.

Franklyn K. Brann, San Francisco, Cal., for Lewis Dixon.

Paul G. Sloan, San Francisco, Cal., for Loretta Bonney.

Edward C. Bell, Oakland, Cal., for Anthony Martin.

Arthur W. Ruthenbeck, Oakland, Cal., for Nolan Hall.

J. Frank McCabe, San Francisco, Cal., for Stephen Davenport.

George G. Walker, San Francisco, Cal., for Melvin Andrews.

John B. Rest, Oakland, Cal., for Rodney Andrews.

Wesley E. Helm, Richmond, Cal., for Gary Collins.

Michael J. Keady, San Francisco, Cal., for George Stringer.

Stephen Arian, San Francisco, Cal., for Clarence Mure.

William M. Goodman, Asst. Fed. Public Defender, San Francisco, Cal., for J. Johnson.

Marvin Stender, San Francisco, Cal., for M. L. Martini.

Paul A. Harris, San Francisco, Cal., for Blackmer.

Stephen Perelson, San Francisco, Cal., for Sweet.

Jerrold M. Ladar, San Francisco, Cal., for Hill.

Marcus S. Topel, San Francisco, Cal., for Searcy Baker Andrews.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

Defendants herein are charged with violations of 21 U.S.C. §§ 841(a)(1), 843(b) and 846, Possession with Intent to Distribute Cocaine, Possession with Intent to Distribute Heroin, Use of Telephone to Facilitate Commission of a Felony, and Conspiracy to Possess and Distribute Controlled Substances, respectively. On December 22, 1975, defendants moved the Court to dismiss the indictment pursuant to Rule 12 of the Federal Rules of Criminal Procedure on the ground that the Government's failure to republish the schedules of controlled substances established by 21 U.S.C. § 812, as

required by § 812(a), renders those schedules void and, therefore, the indictment fails to state an offense. A hearing was held on the motion on January 21, 1976, at which time the Court denied the motion from the bench, stating its reasons substantially as set forth below. Because of the novelty and importance of the issues presented, the Court decided to set forth its views in a Memorandum of Opinion.

■ The Comprehensive Drug Abuse Prevention and Control Act of 1970, also known as the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("the Act"), was enacted on October 27, 1970. The principal purpose of the Act was

"to deal in a comprehensive fashion with the growing menace of drug abuse in the United States (1) through providing authority for increased efforts in drug abuse prevention and rehabilitation of users, (2) through providing more effective means for law enforcement aspects of drug abuse prevention and control, and (3) by providing for an overall balanced scheme of criminal penalties for offenses involving drugs." H.R.Rep. No. 91–1444, 91st Cong., 2d Sess. (1970), in 3 *U.S.Code Cong. & Admin.News*, p. 4567 (1970).

Section 812 of Title 21, United States Code ("Section 812"), established five schedules of controlled substances and listed those drugs and other substances which were initially to be included in each schedule. That section also provided that

"The schedules established by this section shall be updated and republished on a semi-annual basis during the two-year period beginning one year after the date of enactment of this subchapter and shall be updated and republished on an annual basis thereafter." 21 U.S.C. § 812(a).

Other drugs and substances not listed in the statute which the Attorney General and the Secretary of Health, Education, and Welfare believe should be controlled would be classified and assigned to the appropriate schedule according to a procedure established by 21 U.S.C. § 811 ("Section 811"), as discussed below. Section 841(a) of Title 21, United States Code, made it unlawful "for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance * * *."

On May 12, 1972, January 8, 1973, March 30, 1973, and June 20, 1974, the Government republished the schedules of controlled substances as required by Section 812(a) of the Act.[1] Since the Act requires republication of the schedules "on an annual basis" after the initial two-year period following enactment of the Act, 21 U.S.C. § 812(a), republication was necessary on or before June 20, 1975, in order to comply with the mandate of the Act. On April 1, 1975, the schedules of controlled substances were published in the Code of Federal Regulations, appearing at 21 C.F.R. § 1308, but were not republished in the Federal Register subsequent to June 20, 1974.

Defendants contended that republication of the schedules in the Code of Federal Regulations, but not in the Federal Register, did not comply with the statutory requirement. They argued further that because no valid publication was in effect during the period the acts charged in the indictment allegedly occurred—July 21, 1975, to November 30, 1975—neither heroin nor cocaine were controlled substances at that time, and therefore, the indictment failed to state an offense and must be dismissed.

Defendants' motion was by no means frivolous; it raised substantial and difficult questions of statutory construction and case law interpretation. To this Court's knowledge, only one other court had considered the precise issue presented here, *United States v. Monroe*, 270

1. The republished schedules appeared in 37 Fed.Reg. 9545, 38 Fed.Reg. 953, 38 Fed.Reg. 8254, and 39 Fed.Reg. 22140, respectively.

F.Supp. 408 (N.D.Cal.1976).[2] In that case, the court denied the motion to dismiss. As this Court concurs in the result reached by the *Monroe* court, it is unnecessary to restate that court's reasoning here. The Court wishes merely to set forth briefly its own views on the issues defendants' motion presented.

For the purposes of this motion, the Court assumed, without deciding, that republication of the schedules of controlled substances in the Code of Federal Regulations, rather than in the Federal Register, did not comply with the annual republication requirement of Section 812(a).[3] What remained to be decided were the consequences that flowed from such assumed noncompliance. The Court was of the opinion that a careful reading of the Act, with particular attention to its legislative history, established beyond doubt that Congress did not intend for the controlled substances listed in Section 812(c) to become de-controlled by the mere failure of the Government to republish the schedules of controlled substances. Furthermore, the Court did not

believe that the relevant case law in this Circuit compelled a contrary conclusion.

Section 812(c) sets forth the initial lists of controlled substances for each schedule and provides that the schedules "shall, unless and until amended pursuant to section 811 of this title," consist of the listed drugs and other substances. The cross-reference to 21 U.S.C. § 811 is to the procedures the Attorney General must follow if he wishes to change in any way the contents of the schedules of controlled substances contained in Section 812(c), whether by addition of a substance to or removal of a substance from the schedules, or by transfer of a substance from one schedule to another. Although the Attorney General is empowered to "remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule," 21 U.S.C. § 811(a)(2), he can do so only in compliance with the detailed procedures set forth in subsection 811(b). That subsection provides in pertinent part:

**2.** At least three other courts, however, had been urged to dismiss indictments charging violations of the Controlled Substances Act on the ground that the republication requirement of Section 812(a) had not been met. *United States v. Mundt,* 508 F.2d 904, 908 (10 Cir. 1974), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975); *United States v. Infelice,* 506 F.2d 1358, 1364–1365 (7 Cir. 1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802 (1975); *United States v. Nocar,* 497 F.2d 719, 722–723 (7 Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 315 (1974). Defendants appeared to place great weight upon the apparent assumption of those courts that an invalid republication would be grounds for dismissal. However, in each of those cases the courts found that a valid republication was in effect at the time the alleged criminal acts occurred. Consequently, none of them gave more than cursory attention to the questions posed here. With all due respect, this Court was not inclined to accord much weight to the unarticulated, implicit assumptions of other courts—which were *dicta,* at best—concerning difficult questions of law.

**3.** Whether that assumption was correct as a matter of law was by no means clear. Section 812(a) speaks of update and republish. Defendants maintained that that section must be

construed in light of the rule-making procedures of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* explicitly referenced in Section 811 of the Act. The APA procedures clearly require publication in the Federal Register. However, as discussed below, the Act contemplates utilization of those rule-making procedures only when the Attorney General seeks to control or de-control a drug or substance or to transfer any drug or substance from one schedule to another. As explained in the legislative history of the Act, "Part B of the bill (sections 201 and 202) lists the drugs *initially* subject to control under the legislation, and establishes a procedure for *future* determinations as to drugs to be subject to the controls of the bill." H.R.Rep. No. 91–1444, *supra,* in 3 *U.S.Code Cong. & Admin.News,* p. 4589 (1970) (emphasis added). It does not necessarily follow that the publication requirements of the Administrative Procedure Act must or even should be incorporated into Section 812(a) of the Act, where republication may involve merely a restatement of prior existing schedules. Congress may have intended for publication in the Federal Register of only those substances the Attorney General proposed to add, remove or transfer from one schedule to another, with annual republication in the Code of Federal Regulations of the schedules in their entirety.

"The Attorney General shall, before initiating proceedings under subsection (a) of this section to control a drug or other substance *or to remove a drug or other substance entirely from the schedules*, and after gathering the necessary data, request from the Secretary a scientific and medical evaluation, and his recommendations, as to whether such drug or other substance should be so controlled or removed as a controlled substance. In making such evaluation of recommendations, the Secretary shall consider the factors listed in paragraphs (2), (3), (6), (7), and (8) of subsection (c) of this section and any scientific or medical considerations involved in paragraphs (1), (4), and (5) of such subsection. * * * The recommendations of the Secretary to the Attorney General shall be binding on the Attorney General as to such scientific and medical matters, and if the Secretary recommends that a drug or other substance not be controlled, the Attorney General shall not control the drug or other substance. *If the Attorney General determines that these facts and all other relevant data constitute substantial evidence of potential for abuse such as to warrant control or substantial evidence that the drug or other substance should be removed entirely from the schedules, he shall initiate proceedings for control or removal, as the case may be, under subsection (a) of this section.*" 21 U.S.C. § 811(b) (emphasis added).

Furthermore, as indicated in subsection 811(b), both the Secretary of Health, Education, and Welfare and the Attorney General are required to consider the factors listed in subsection (c) of Section 811 in evaluating and recommending whether a drug or other substance should be controlled or de-controlled. Those factors include:

"(1) Its [the drug's] actual or relative potential for abuse.

(2) Scientific evidence of its pharmacological effect, if known.

(3) The state of current scientific knowledge regarding the drug or other substance.

(4) Its history and current pattern of abuse.

(5) The scope, duration, and significance of abuse.

(6) What, if any, risk there is to the public health.

(7) Its psychic or physiological dependence liability.

(8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter." 21 U.S.C. § 811(c).

The legislative history of Section 811 indicates that the procedures set forth therein were adopted after "considerable controversy" and were intended to strike a careful balance "between the extent to which control decisions should be based upon law enforcement criteria, and the extent to which such decisions should be based on medical and scientific determinations." H.R.Rep.No.91–1444, *supra*, in 3 *U.S.Code Cong. & Admin.News*, p. 4589 (1970). The procedures are discussed extensively in the legislative history. *Id.* at 4599–4604.

In the opinion of the Court, this section of the Act reflected a clear and unmistakable Congressional intent that no drug or other substance would be added to *or removed from* the schedules of controlled substances unless pursuant to carefully designed procedures. Those procedures accord due deference to the authority and expertise of both the Attorney General and the Secretary of Health, Education, and Welfare and require thorough study and consideration on their part. Had the Court adopted defendants' construction of the Act and held that merely by failing to republish the schedules the Attorney General had, in effect, removed every controlled substance from the schedules, the Court would have permitted the Attorney General to do indirectly what the Act explicitly forbids him to do directly: unilaterally and summarily remove a controlled substance from the schedules. The Court refused to believe that Congress ever intended such an anomalous and drastic result to follow from the Govern-

ment's failure to comply with the republication requirement of Section 812(a).

The primary thrust of defendants' argument, however, was that the law in this Circuit compelled dismissal of the indictment, Congressional intent notwithstanding. Defendants relied heavily upon *Hotch v. United States*, 212 F.2d 280, 284, 14 Alaska 594 (9 Cir. 1954), where the Court held that the Government's failure to publish a regulation rendered that regulation invalid and deprived it of force of law, whether or not a defendant had actual notice of the regulation's contents. As stated by the Court,

> "Under our system of law, no act is punishable as a crime unless it is specifically condemned by the common law or by a statutory enactment of the legislature. * * * Since Congress could delegate its authority, it could also delegate the manner in which that authority is to be exercised. Therefore, the Administrative Procedure Act and the Federal Register Act must be read as a part of every Congressional delegation of authority, unless specifically excepted. Those Acts require publication, irrespective of actual notice, as a prerequisite to the *issuance* of a regulation making certain acts criminal. If notice of a proposed rule is not published in the Federal Register at least thirty days prior to its issuance, or if good cause is not found and published for the immediate issuance of a rule, the rule cannot be legally issued; if the rule itself is not published, it follows that it has not been issued; and if a rule has not been issued, it has no force as law.
>
> "If certain acts have not been made crimes by duly enacted law, the knowledge of their contemplated administrative proscription cannot subject the informed person to criminal prosecution. While ignorance of the law is no defense, it is conversely true that a law which has *not* been duly enacted is not a law, and therefore a person who

does not comply with its provisions cannot be guilty of any crime." 212 F.2d at 283–284 (footnotes omitted).

The rule proclaimed in *Hotch* has not been followed by courts in other circuits. *See, e. g., Kessler v. F.C.C.*, 117 U.S.App. D.C. 130, 326 F.2d 673, 690 (1963); *United States v. Aarons*, 310 F.2d 341, 346 (2 Cir. 1962) (Friendly, J.); *United States v. San Juan Lumber Co.*, 313 F.Supp. 703, 707 (D.Col.1969); indeed, it has been explicitly criticized. *See, e. g., United States v. Aarons, supra*, 310 F.2d at 346; 1 Davis, Administrative Law Treatise § 6.10, at 395–396 (1958). Be that as it may, this Court bound by the *Hotch* rule unless that case was distinguishable from the instant case.

The Court found that it was so distinguishable, and on several grounds. *Hotch* concerned a statute which delegated to the Secretary of the Interior [4] the authority to establish closed fishing waters in Alaska. Act of June 6, 1924, ch. 272, 43 Stat. 464 *et seq.* Congress initially prescribed that Alaskan waters would be closed to salmon fishing only from 6:00 p. m. Saturday to 6:00 a. m. Monday of each week. 43 Stat. 466. But, pursuant to the authority delegated to him, the Secretary of the Interior extended the closed period for all fishing in the Taku Inlet, so that fishing was prohibited commencing at 6:00 a. m. Friday and, by a second extension, at 6:00 p. m. Thursday. It was the latter extension that was not effectuated in compliance with the publication requirements of the Administrative Procedure Act, 5 U.S.C. §§ 552(a)(1)(D) and 553(b).

Hotch was charged with violating the statute by fishing in the Taku Inlet during the twelve-hour period between 6:00 p. m. Thursday and 6:00 a. m. Friday, conduct which prior to the issuance of the Secretary's regulation had been lawful. The decision in that case, then, centered upon administrative action which purported to make illegal hitherto legal conduct. It was that aspect of the case

4. As originally enacted, the authority was delegated to the Secretary of Commerce.

which so deeply concerned the Court of Appeals. To quote again from *Hotch*:

> "Under our system of law, no act is punishable *as a crime* unless it is specifically condemned by the common law or by a statutory enactment of the legislature. * * * Those Acts [the Administrative Procedure Act and the Federal Register Act] require publication * * * as a prerequisite to the issuance of a regulation *making certain acts criminal.* * * * If certain acts have not been made crimes by duly enacted law, the knowledge of their contemplated administrative proscription cannot subject the informed person to *criminal prosecution.*" *Hotch v. United States, supra,* 212 F.2d at 283–284 (emphases added and deleted).

In contrast, the instant case concerns administrative action (or, more accurately, non-action) which, if defendants' position had prevailed, would have rendered legal hitherto illegal conduct. This case and *Hotch* are thus, in essence, mirror images of each other.

Furthermore, the Court of Appeals for the Ninth Circuit had itself narrowly construed *Hotch.* In *California Citizens Band Association v. United States,* 375 F.2d 43, 48–49 (9 Cir.), *cert. denied,* 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967), the court rejected the argument that the failure of the Federal Communications Commission to give notice of proposed rule-making as required by 5 U.S.C. § 553(b)(3) rendered invalid regulations promulgated by that Commission.[5] Petitioners in that case relied upon *Hotch,* presumably upon the court's statement that "[i]f notice of a proposed rule is not published in the Federal Register at least thirty days prior to its issuance, or if good cause is not found and published for the immediate issuance of a rule, the rule cannot be legally issued." *Hotch, supra,* 212 F.2d at 284 (footnote omitted). The Court of Appeals, however, found that adequate notice of the proposed rule-making had been given since

> "other provisions of the proposed rules, in addition to previous policy statements published in the Federal Register (25 FR 1408), revealed the same general limitations as those adopted in the 'Basis and Purpose' section of the newly adopted rules. Further, the new rules here in question were published in the Federal Register, 29 FR 11099 on July 31, 1964, and were subsequently published in 47 CFR § 95.1, et seq. * * *." *California Citizens Band Association v. United States, supra,* 375 F.2d at 49.

Although these remarks should not be accorded undue emphasis, they indicated to this Court the Court of Appeals' reluctance to apply the *Hotch* rule inflexibly and without regard for the underlying facts of each case, including whether generally related information had previously been published in the Federal Register or subsequently republished in the Code of Federal Regulations. Here, of course, there was no dispute that both heroin and cocaine were included in the schedules of controlled substances as set forth in the Act and as subsequently republished on several occasions in the Federal Register and in the Code of Federal Regulations.

Finally, the Court believed that *Hotch* should not be read expansively but should be confined within narrow limits to the particular facts presented there or to closely analogous situations. *Hotch* concerned an expansive delegation of quasi-legislative authority. The Secretary of the Interior was empowered by Congress to determine, *inter alia,* which Alaskan waters would be closed, when and for how long they would be closed, what kind of fishing gear would be permitted, and whether fishing in closed waters would be "prohibited" or merely "limited"; the Secretary was further authorized to make any regulations "as to

---

5. Unlike the situation in *Hotch,* the regulations themselves were published in the Federal Register.

time, means, methods, and extent of fishing as he may deem advisable." [6] The statute did not require the Secretary to make any findings before deciding whether to close Alaskan waters to fishing, nor did it specify any factors he was to consider in reaching his decision. It provided no procedures, no guidelines, no standards to assist him in the exercise of his delegated authority. The Secretary's actions would be structured and controlled solely by the applicable standards and procedures of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, and the Federal Register Act, 44 U.S.C. § 1501 *et seq.* As the district court emphasized in construing that statute, "Unquestionably the authority vested in the Secretary [was] exceedingly broad." *United States v. Hotch,* 107 F.Supp. 159, 160, 14 Alaska 33 (D.Alaska 1952), *rev'd,* 208 F.2d 244, 14 Alaska 574 (9 Cir. 1953), *petition for rehearing denied,* 212 F.2d 280, 14 Alaska 594 (9 Cir. 1954).

It was against this background that the Court of Appeals was asked to determine the validity of an unpublished, administrative proscription. Under these circumstances, it is not surprising that the court was determined to hold the Secretary to a strict standard of compliance with all relevant rule-making procedures.

Here, in contrast, the authority of the Attorney General was narrowly circumscribed by Congress. Congress itself established the initial contents of the schedules of controlled substances and required the Attorney General to follow carefully detailed procedures, involving specific factual findings and thorough medical and scientific evaluations in conjunction with the Secretary of Health, Education, and Welfare, before any change in those schedules could be made. This was simply not a case where Congress had chosen to delegate extensive, open-ended, largely unstructured rule-making authority to the executive branch, as was the situation before the court in *Hotch.*

There is, of course, language in *Hotch* which, in its very expansiveness, could have been applied without undue strain to the facts of the instant case. However, bearing in mind the general principle of law that a decision is binding authority in the first instance only with respect to the particular factual situation before the court at that time, and further, that the facts here were qualitatively distinct from those in *Hotch,* the Court believed that to apply the language of *Hotch* to the facts presented here would have been unsound and ill advised. Accordingly, the Court denied

---

**6.** As originally enacted, the relevant statute provided in pertinent part:

"[F]or the purpose of protecting and conserving the fisheries of the United States in all waters of Alaska the Secretary of Commerce from time to time may set apart and reserve fishing areas in any of the waters of Alaska over which the United States has jurisdiction, and within such areas may establish closed seasons during which fishing may be limited or prohibited as he may prescribe. Under this authority to limit fishing in any area so set apart and reserved the Secretary may (a) fix the size and character of nets, boats, traps, or other gear and appliances to be used therein; (b) limit the catch of fish to be taken from any area; (c) make such regulations as to time, means, methods, and extent of fishing as he may deem advisable. From and after the creation of any such fishing area and during the time fishing is prohibited therein it shall be unlawful to fish therein or to operate therein any boat, seine, trap, or other gear or apparatus for the purpose of taking fish; and from and after the creation of any such fishing area in which limited fishing is permitted such fishing shall be carried on only during the time, in the manner, to the extent, and in conformity with such rules and regulations as the Secretary prescribes under the authority herein given. * * * [B]ut the Secretary of Commerce through the creation of such areas and the establishment of closed seasons may further extend the restrictions and limitations imposed upon fishing by specific provisions of this or any other Act of Congress." 43 Stat 464–465.

**1014**

defendants' motion to dismiss the indictment for failure to state an offense.