**UNITED STATES, Plaintiff,**

v.

**Laurence MONROE et al., Defendants.**

**No. CR–75–577 RFP.**

United States District Court,
N. D. California.

Feb. 5, 1976.

Malcolm Stuart Segal, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Steven M. Kipperman, Kipperman, Shawn & Keker, San Francisco, Cal., for defendant Laurence Monroe.

William L. Osterhoudt, San Francisco, Cal., for defendant Cynthia Horn.

William Goodman, Federal Public Defender, San Francisco, Cal., for defendant Eddie Lee Johnson.

Dennis Roberts, Oakland, Cal., for defendant Carolyn Willis.

## OPINION *

PECKHAM, District Judge.

Defendants are charged with Conspiracy to Distribute and to Possess Heroin and Cocaine with Intent to Distribute (21 U.S.C. §§ 846, 841(a)(1)) and Distribution and Possession with Intent to Distribute Heroin and Cocaine (21 U.S.C. § 841(a)(1)). The motion presently before the court is defendant Monroe's Motion to Dismiss the Indictment, in which defendants Horn, Johnson and Willis have joined.

* The opinion of January 9, 1976, is hereby vacated.

1. Section 812(a) of Title 21 reads:

 "There are established five schedules of controlled substances, to be known as schedules I, II, III, IV, and V. Such schedules shall initially consist of the substances listed in this section. The schedules established by this section shall be updated and republished on a semiannual basis during the two-year period beginning one year after the date of enactment of this subchapter and shall be updated and republished on an annual basis thereafter."

 Thus, between October 27, 1971 and October 27, 1973, the schedules were required to be republish semiannually, with the first republication required on or before April 27, 1972. *See United States v. Nocar,* 497 F.2d 719, 723 (7th Cir.) *cert. denied* 419 U.S. 1038, 95 S.Ct.

## I. BACKGROUND FACTS

Effective October 27, 1970, Congress enacted Public Law 91–513, the Comprehensive Drug Abuse Prevention and Control Act of 1970, also known as the Controlled Substance Act (hereafter referred to as "the Act"). Section 401(a) of the Act, 21 U.S.C. § 841(a), which the defendants are charged with violating and conspiring to violate, *see* 21 U.S.C. § 846, makes it unlawful for any person knowingly or intentionally "(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." The term "controlled substance" means "a drug or other substance, or immediate precursor, included in schedules I, II, III, IV, or V [of the Act]." 21 U.S.C. § 802(6). Section 202 of the Act, 21 U.S.C. § 812 (hereafter "section 812") lists the drugs and substances which shall initially comprise schedules I, II, III, IV, and V, and requires that those sections "be updated and republished" annually.[1]

◼ Pursuant to section 812's mandate, the government has republished the schedules in the Federal Register on three separate occasions,[2] the last time being June 20, 1974. Accordingly, on June 20, 1975, it was necessary for the government to republish the schedules again.[3] This was not done. Rather, on

526, 42 L.Ed.2d 315 (1974). After October 27, 1973, the schedules were to be republished on an annual basis.

2. (1) May 12, 1972, 37 Fed.Reg. 9545; (2) January 8, 1973, 38 Fed.Reg. 953, and March 30, 1973, 37 Fed.Reg. 8254. (The March republication was an effort to correct the earlier January republication which may have inadvertently repealed many regulations); (3) June 20, 1974, 39 Fed.Reg. 22140.

3. Defendants contend that because the schedules republished in June 20, 1974, were prefaced with the remark that "the Drug Enforcement Administration hereby orders the annual publication of the schedules of controlled substances *for 1974*" (emphasis added), these schedules were required to be republished on January 1, 1975. We disagree with defend-

April 1, 1975, the Schedules of Controlled Substances that were published in the Federal Register on June 20, 1974, were published in the Code of Federal Regulations—21 C.F.R. § 1308.

Defendants contend that the appearance of the June 20, 1974, Schedules of Controlled Substances in the April, 1975, publication of the Code of Federal Regulations does not comply with section 812's republication requirement and move to dismiss the indictment for failure to state an offense. Apparently, defendants believe that section 812's republication requirement was intended to serve as a procedure by which the schedules would be periodically reissued as agency regulations, and that by failing to properly republish the schedules, the government inadvertently permitted them to lapse and expire. We disagree with defendants' interpretation; however, even if defendants' interpretation is correct, its application to this case should not result in the dismissal of the government's indictment.

II. THE REPUBLICATION REQUIREMENT OF 21 U.S.C. SECTION 812 [4]

■ It is axiomatic that section 812's republication requirement cannot be

properly interpreted without reference to the rest of the Act's provisions. Accordingly, defendants emphasize section 201's (21 U.S.C. § 811 [hereafter section 811]) explicit incorporation of the publication requirements of the Federal Register Act, 44 U.S.C. § 1501 et seq.,[5] and the Administrative Procedure Act, 5 U.S.C. § 551 et seq.,[6] in support of their contention that the annual republication requirement of section 812 is but another integral part of the comprehensive rulemaking procedure legislated by Congress. While agreeing that section 812 must be read in light of section 811,[7] we afford far less significance to section 812's republication requirement than do defendants.

Section 811 delegates to the Attorney General and Secretary of Health Education and Welfare the authority to add, delete or transfer substances from the schedules of controlled substances which Congress initially provided. However, in order to exercise the power that was delegated to them, the Attorney General and Secretary must follow a comprehensive procedure, in which they must consider a set of Congressionally enumerat-

---

ants' interpretation of those remarks. Since at this time, the schedules were only required to be republished on an annual basis, it is our belief that the DEA was only referring to the republication obligation which would occur in 1974 as opposed to some different year.

**4.** At the outset, we note that this court appears to be the first to carefully examine the meaning and purpose of section 812's republication requirement. Although three other courts have been confronted with motions to dismiss indictments of alleged narcotics distributors because of the government's alleged failure to properly republish the schedules of controlled substances as required by 21 U.S.C. § 812(a), see United States v. Mundt, 508 F.2d 904 (10th Cir. 1974) cert. denied 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975); United States v. Infelice, 506 F.2d 1358 (7th Cir.) cert. denied 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802 (1974); United States v. Nocar, 497 F.2d 719 (7th Cir.) cert. denied 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 315 (1974), each court found a valid republication to have been in effect at the time the alleged criminal acts occurred. Accordingly, the fact that these courts appeared to have operated under the

assumption that an improper republication could render an indictment under 21 U.S.C. § 841 invalid cannot be given too much weight.

It should also be noted that here, as in the above-cited cases, the government notes that the first overt act charged in the indictment is alleged to have occurred at a time (on or about June 3, 1975) when a valid republication was still in effect. See note 3, supra. However, that overt act is simply that defendant Lott met with a government agent and "discussed the availability of large amounts of cocaine and heroin in Oakland, California." Accordingly, it is of no relevance in deciding this motion.

**5.** The publication requirements of the Federal Register Act are found in 44 U.S.C. § 1505, which is set out in relevant part in the Appendix to this opinion.

**6.** The publication requirements of the Administrative Procedure Act appear in 5 U.S.C. § 552, which is set out in relevant part in the Appendix to this opinion.

**7.** Section 811 of Title 21 is set forth in the Appendix to this opinion.

ed factors[8] and follow rule-making procedures prescribed by the Administrative Procedure Act.[9]

■ It is also significant that section 811(a) provides that "[p]roceedings for the issuance, amendment, or repeal of [the controlled substance schedules] may be initiated by the Attorney General (1) on his own motion, (2) at the request of the Secretary, or (3) *on the petition of any interested party.* (Emphasis added.) Without such a provision, it could be argued that the purpose of section 812's annual republication requirement was to force the Attorney General to formally consider whether to retain or delete from the schedules, substances, which the Attorney General might otherwise not have had occasion to consider. However, having already given any interested party the right to initiate proceedings with respect to the addition or deletion of substances from the schedules, there would be no need for Congress to further provide in section 812 that these schedules be reissued annually pursuant to the formal rule-making procedure of the Administrative Procedure Act. Accordingly, we will not attribute this intent to Congress in drafting section 812(a).

■ Moreover, defendants' interpretation of section 812(a) cannot be reconciled with subsection (c) of section 812, which reads as follows:

Schedules I, II, III, IV, and V [, the schedules established by this section,] *shall, unless and until* amended pursuant to section 811 of this title, *consist of the following drugs or other substances,* by whatever official name, common or usual name, chemical name, or brand name designated. (Emphasis added.)

The clear import of this subsection is that the substances initially listed by Congress on the schedules that it provid-ed are to remain controlled substances until they are expressly removed from the schedules pursuant to section 811. Thus, while section 812(a) clearly orders the controlled substance schedules to be republished, it is clear that Congress did not intend republication to serve as a reissuance of the schedules, which if done improperly would cause those schedules to lapse and expire. Rather, we hold that Congress intended no more than what it plainly said in section 812(a)—that is that

There are established five schedules of controlled substances, to be known as schedules I, II, III, IV, and V. Such schedules shall initially consist of the substances listed in this section. *The schedules established by this section . . . shall be updated and republished on an annual basis . . . .* (Emphasis added.)

Thus far, we have only spoken in terms of section 812's "republication requirement," but as is plain from that section's language, the order is to "update and republish." "Update," of course, means simply to bring up to date, or to make current. Thus, it is our belief that Congress's direction to "update" the schedules it established was made in contemplation of changes in the schedules being made pursuant to the procedure established by section 811. Similarly, we believe the requirement that the schedules, once "updated," be "republished" was solely for the purpose of establishing one list which would reflect all substances which were currently subject to the Act's provisions. In the absence of this requirement, in order to ascertain what substances were controlled, one would have to refer to the initial list promulgated by Congress and then search the Federal Register for evidence of every subsequent addition and deletion made pursuant to section 811.

---

**8.** See 21 U.S.C. § 811(c).

**9.** The rule-making procedures prescribed by the Administrative Procedure Act appear at 5 U.S.C. § 553, which is set forth in the Appendix to this opinion.

Thus, according to our interpretation of 21 U.S.C. § 812(a),[10] defendants' motion to dismiss the indictment must be denied; however, even under defendants' interpretation of section 812, we do not think that dismissal of the indictment would be proper.

## III. THE CONSEQUENCES OF NON-PUBLICATION

Assuming that defendants' interpretation of section 812 were correct and that the government's obligation to republish the schedules of controlled substances is the same as their obligation to publish any substantive agency rule, 5 U.S.C. § 552(a), or document required to be published by an act of Congress, 44 U.S.C. § 1505(a)(3), we would have to determine the consequences which result from the government's failure to live up to its obligation.

■ Section 7 of the Federal Register Act, 44 U.S.C. § 1507 provides that

A document required by section 1505(a) of this title to be published in the Federal Register is not valid as against a person who has not had actual knowledge of it until the duplicate originals or certified copies of the document have been filed . . . and a copy [has been] made available for public inspection as provided by section 1503 of this title. . . .

The apparent inference to be drawn from this section is that Congress intended such a document to be valid against any person who has actual knowledge of it even though the duplicate originals or certified copies were not filed as required, and even though the document was never published. Yet, in *Hotch v. United States*, 212 F.2d 280, 14 Alaska 594 (9th Cir. 1954), the court construed this provision[11] as making actual knowledge a sufficient substitute only for the filing requirement of section 2,[12] but not

**10.** It would appear that under this interpretation of section 812(a) that if no changes in the June 20, 1974 schedules of controlled substances have been made, the publication of those schedules in the April, 1975, issue of the Code of Federal Regulations would satisfy the purpose intended to be served by that section's mandate that such schedules be annually updated and republished. However, we need not decide this question, since in our view even if the government has not sufficiently complied with section 812(a)'s requirements, dismissal of the government's indictment would be improper.

Nevertheless, we urge the government to carry out its obligation under this and other Congressional mandates far more carefully than was done here. At the time when republication was required, the only available case law appeared to indicate that failure to properly republish the controlled substance schedules could result in the invalidation of those schedules. See note 4, *supra*, and cases cited therein. Although it now appears that any such indication was mistaken, it is clear that the government was unaware of this at the time they decided not to republish the controlled substance schedules in the Federal Register. Indeed, the only argument advanced by the government assumed that defendants' interpretation of section 812(a) was correct, but contended that the publication of the schedules in the Code of Federal Regulations satisfied that section's requirements. This argu-

ment was not convincing, and was somewhat misleading in view of the fact that such action was represented to have comprised a conscious government decision to make the schedules more accessible when in point of fact it appears that the schedules automatically appear in the yearly reissue or reprint of the Code of Federal Regulations. Accordingly, in denying defendants' motion to dismiss, this court does not mean to place its imprimatur upon the government's conduct in this matter.

**11.** At that time, section 7 read:

"No document required under section 305(a) of this title to be published in the Federal Register shall be valid against any person who has not had actual knowledge thereof until the duplicate originals or certified copies of the document shall have been filed . . . and a copy made available for public inspection as provided in section 302 of this title." 44 U.S.C. § 307 (1964).

**12.** Section 2 of the Federal Register Act, 44 U.S.C. § 1503, as amended, provides:

"The original and two duplicate originals or certified copies of a document required or authorized to be published by section 1505 of this title shall be filed with the Office of the Federal Register, which shall be open for that purpose during all hours of the working days when the National Archives Building is open for official business. The Administrator of General Services shall cause to be noted on the original and duplicate originals or certified

for the independent requirement of publication.

*Hotch* involved the conviction of a commercial fisherman for fishing in waters during a period that had been declared "closed" by regulation of the Department of the Interior. After the conviction had been affirmed on appeal, 208 F.2d 244, the defense discovered that no published regulation existed which prohibited the defendant's acts,[13] and the court dismissed the case on reargument. 208 F.2d 250. Upon a second reargument, the court rejected the government's contention that publication was unnecessary since the defendant had actual notice of the extended "closed period." 212 F.2d 280. The court held that where a regulation or rule is not published as required, "it follows that it has not been issued; and if a rule has not been issued, it has no force as law." 212 F.2d at 284. However, since *Hotch* was decided in 1954, we note that its holding that actual notice is no defense to the failure to publish an agency regulation has been seriously questioned and disapproved.[14]

In *United States v. Aarons*, 310 F.2d 341 (2nd Cir. 1962), Judge Friendly, after carefully examining the legislative history of both the Federal Register Act and Administrative Procedure Act, expressly refused to follow *Hotch* stating:

> The filing and publication requirements of the FRA are not independent. Section 2 directs the agency to do the filing with the Administrator of copies of each document the day and hour of filing. When the original is issued, prescribed, or promulgated outside the District of Columbia, and certified copies are filed before the filing of the original, the notation shall be of the day and hour of filing of the certified copies. Upon filing, at least one copy shall be immediately available for public inspection in the Office. The original shall be retained in the archives of the National Archives of the United States and shall be available for inspection under regulations prescribed by the Administrator. The Office shall transmit immediately to the Government Printing Office for printing, as provided by this chapter, one duplicate original or certified copy of each document required or authorized to be published by section 1505 of this title. Every Federal agency shall cause to be transmitted for filing

General Services, who then puts the publishing machinery in motion; filing is the true requirement made of the agency, since publication is then to follow automatically. The FRA was passed to mitigate the hardship of the principle *ignorantia legis neminem excusat* in an age when much "law" takes the form of executive or administrative action not to be found in the statute books. [Citation omitted.] Hence the provision that no document required to be published should be valid against a person ignorant of it until it was filed for publication. We find no reason to believe that the framers of the Act wished similarly to relieve persons who knew just what the Government required of them. [Citation omitted.] 310 F.2d at 346.

■ Moreover, other courts and commentators who have considered the question have uniformly adopted Judge Friendly's position that failure to publish or file a document as required by the Federal Register Act and Administrative Procedure Act is without consequence as against a person having actual knowledge. *See, e. g., N. L. R. B. v. Chelsea Clock Co.*, 411 F.2d 189, 191 (1st Cir. 1969); *Kessler v. F. C. C.*, 117 U.S.App.D.C. 130, 326 F.2d 673, 690 (1963); *United States v. San Juan Lumber Company*, 313 F.Supp. 703, 707 (D.Colo.1969); 1 Davis, Administrative Law Treatise, § 6.10 (1958); Comment, 68 Harv.L.Rev. 535, 536 (1955). Thus, were this issue to

the original and the duplicate originals or certified copies of all such documents issued, prescribed, or promulgated by the agency."

13. Apparently, the Secretary had previously published a regulation which created or extended a "closed period," but had not published the regulation creating the closed period during which Hotch fished and for which he was prosecuted.

14. Of course, were it necessary for us to reach this question, we would be bound by the Ninth Circuit's precedent. In this instance, it is nevertheless appropriate to comment on the soundness of the *Hotch* ruling and respectfully urge that it be reconsidered. *See N.O.W. v. Bank of California*, C–72–441 RFP, reported at 5 E.P.D. ¶ 8510 (N.D.Cal.1973).

prove determinative upon appeal, we would respectfully urge the Ninth Circuit to reject the *Hotch* holding that actual notice is no defense to the failure to publish an agency regulation.

For the reasons stated herein, defendants' motion to dismiss the indictment is hereby denied.

It is so ordered.

### APPENDIX

1. Section 1505 of Title 44 provides in relevant part as follows:

"§ 1505. Documents to be published in Federal Register

(a) Proclamations and Executive Orders; documents having general applicability and legal effect; documents required to be published by Congress. There shall be published in the Federal Register—

(1) Presidential proclamations and Executive orders, except those not having general applicability and legal effect or effective only against Federal agencies or persons in their capacity as officers, agents, or employees thereof;

(2) documents or classes of documents that the President may determine from time to time have general applicability and legal effect; and

(3) documents or classes of documents that may be required so to be published by Act of Congress.

For the purposes of this chapter every document or order which prescribes a penalty has general applicability and legal effect.

(b) Documents authorized to be published by regulations; comments and news items excluded. In addition to the foregoing there shall also be published in the Federal Register other documents or classes of documents authorized to be published by regulations prescribed under this chapter with the approval of the President, but comments or news items of any character may not be published in the Federal Register."

2. Section 552 of Title 5 provides in relevant part as follows:

"(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register."

3. Section 811 of Title 21 provides in relevant part as follows:

"§ 811. Authority and criteria for classification of substances—Rules and regulations of Attorney General; hearing

(a) The Attorney General shall apply the provisions of this subchapter to the controlled substances listed in the schedules established by section 812 of this title and to any other drug or other substance added to such schedules under this subchapter. Except as provided in subsections (d) and (e) of this section, the Attorney General may by rule—

(1) add to such a schedule or transfer between such schedules any drug or other substance if he—

(A) finds that such drug or other substance has a potential for abuse, and

(B) makes with respect to such drug or other substance the findings prescribed by subsection (b) of section 812 of this title for the schedule in which such drug is to be placed; or

(2) remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule.

Rules of the Attorney General under this subsection shall be made on the record after opportunity for a hearing pursuant to the rulemaking procedures prescribed by subchapter II of chapter 5 of Title 5. Proceedings for the issuance, amendment, or repeal of such rules may be initiated by the Attorney General (1) on his own motion, (2) at the request of the Secretary, or (3) on the petition of any interested party.

### Evaluation of drugs and other substances

(b) The Attorney General shall, before initiating proceedings under subsection (a) of this section to control a drug or other substance or to remove a drug or other substance entirely from the schedules, and after gathering the necessary data, request from the Secretary a scientific and medical evaluation, and his recommendations, as to whether such drug or other substance should be so controlled or removed as a controlled substance. In making such evaluation of recommendations, the Secretary shall consider the factors listed in paragraphs (2), (3), (6), (7), and (8) of subsection (c) of this section and any scientific or medical considerations involved in paragraphs (1), (4), and (5) of such subsection. The recommendations of the Secretary shall include recommendations with respect to the appropriate schedule, if any, under which such drug or other substance should be listed. The evaluation and the recommendations of the Secretary shall be made in writing and submitted to the Attorney General within a reasonable time. The recommendations of the Secretary to the Attorney General shall be binding on the Attorney General as to such scientific and medical matters, and if the Secretary recommends that a drug or other substance not be controlled, the Attorney General shall not control the drug or other substance if the Attorney General determines that these facts and all other relevant data constitute substantial evidence of potential for abuse such as to warrant control or substantial evidence that the drug or other substance should be removed entirely from the schedules, he shall initiate proceedings for control or removal, as the case may be, under subsection (a) of this section.

### Factors determinative of control or removal from schedules

(c) In making any finding under subsection (a) of this section or under subsection (b) of section 812 of this title, the Attorney General shall consider the following factors with respect to each drug or other substance

proposed to be controlled or removed from the schedules:

(1) Its actual or relative potential for abuse.

(2) Scientific evidence of its pharmacological effect, if known.

(3) The state of current scientific knowledge regarding the drug or other substance.

(4) Its history and current pattern of abuse.

(5) The scope, duration, and significance of abuse.

(6) What, if any, risk there is to the public health.

(7) Its psychic or physiological dependence liability.

(8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter."

. . . . .

4. Section 553 of Title 5 provides as follows:

"§ 553. Rule making

(a) This section applies, according to the provision thereof, except to the extent that there is involved—

(1) a military or foreign affairs function of the United States; or

(2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

(2) interpretative rules and statements of policy; or

(3) as otherwise provided by the agency for good cause found and published with the rule.

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 383."