Demetri THOR, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 76–4465

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

June 24, 1977.

Before COLEMAN, GODBOLD and TJOFLAT, Circuit Judges.

---

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.

Demetri Thor, pro se.

Michael P. Carnes, U. S. Atty., Dallas, Tex., Gerhard, Kleinschmidt, Asst. U. S. Atty., Fort Worth, Tex., for respondent-appellee.

Before COLEMAN, GODBOLD and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

In July of 1974, Demetri Thor was convicted of two drug-related federal offenses: possessing a controlled substance (methamphetamine) with intent to distribute,[1] and conspiring to manufacture and possess methamphetamine with intent to distribute.[2] Thor's conviction was affirmed on appeal.[3] He now mounts a collateral attack upon these convictions pursuant to 28 U.S.C. § 2255 (1970), charging that the district court which tried him was without jurisdiction because the indictments leading to his conviction failed to state an offense against the United States. He grounds his contention upon the fact that the Attorney General failed to republish the federal schedules of controlled substances as required by statute, thus (Thor argues) voiding the schedules which would have otherwise been in effect at the time of the acts forming the basis of Thor's conviction. In the proceedings below, the district court resolved the issue against Thor and dismissed his section 2255 petition. We affirm.

I

Thor and the government agree on the material facts of this case. Thor was originally indicted in September of 1973 in a four-count indictment charging Thor and seven others with the commission of various crimes. Thor himself was named as a defendant in two counts of the indictment, which alleged that "on or about December 12, 1972, . . . Demetri Thor . . . did unlawfully, knowingly and intentionally possess with intent to distribute approximately 3677 milliliters of a Schedule II Controlled Substance; to wit, Methamphetamine" in violation of 21 U.S.C. § 841(a) (1970) (Count I); and that "from on or about October 1, 1972, and continuously thereafter until on or about December 12, 1972, . . . Demetri Thor [et al.] did conspire . . . to manufacture and create, and possess with intent to distribute a Schedule II Controlled Substance; to wit, Methamphetamine" in violation of 21 U.S.C. §§ 846 & 841(a) (1970) (Count II). After a jury trial on these charges, Thor was convicted on both counts. Thor's conviction was affirmed on direct appeal to this court,[4] although Thor did not raise in that appeal the issue which he urges before us today.

Since October 27, 1970, the predominant federal drug control legislation has been the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the Act), now codified at 21 U.S.C. §§ 801 et seq. (1970). Section 202 of the Act, 21 U.S.C. § 812 (1970), sets

1. In violation of 21 U.S.C. § 841(a) (1970).

2. In violation of 21 U.S.C. § 846 (1970).

3. *United States v. Thor*, 512 F.2d 811 (5th Cir.), cert. denied, 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 384 (1975).

4. *Id.*

forth five schedules of substances which are subject to federal control. From the Act's inception, methamphetamine has been one such substance. *Id.* § 812(c) (Sched. II) (c). Among other things, the Act calls for a periodic republication of the five schedules: "The schedules established by this section shall be updated and republished on a semi-annual basis during the two-year period beginning one year after the date of enactment of this subchapter and shall be updated and republished on an annual basis thereafter." *Id.* § 812(a).

Since the Act became law on October 27, 1970, the two-year period for semiannual republication of the schedules began to run on October 27, 1971. Thus, the Act called for republication of the schedules at least by April 27, 1972,[5] again by October 27, 1972, and so on until October 27, 1973, after which republication would occur on an annual basis.

In point of fact, however, the Attorney General did not strictly adhere to the time-table which the Act calls for. The schedules were first republished on April 24, 1971,[6] at least six months earlier than what the Act required. The schedules were next republished on January 1, 1972, in the Code of Federal Regulations.[7] Further publications in the Federal Register occurred on May 12, 1972[8] (purportedly retroactive from April 27, 1972), and on January 8, 1973[9] (purportedly retroactive from October 27, 1973). Additionally, the January 8 schedules were republished in the Federal Register on March 30, 1973,[10] and in the Code of Federal Regulations on April 1, 1973.[11]

From this initially confusing series of publication dates, the most serious ramification is that both counts upon which the appellant Thor was convicted alleged conduct which transpired, or at least might have transpired,[12] during a hiatus in the statutorily prescribed succession of semiannual republications. On December 12, 1972 —allegedly the date of Thor's substantive offense and the terminal date of his conspiracy offense—the schedules had not been republished for seven months. Moreover, they would not be republished again for approximately one more month (until January 8, 1973), even though that republication

5. The Seventh Circuit has construed the Act's directive that the schedules be republished "on a semiannual basis during the two-year period beginning one year after [October 27, 1970]" to require initial republication not by October 27, 1971, but rather by April 27, 1972 (i. e., six months after the beginning of the two-year period which the Act establishes). *See United States v. Nocar,* 497 F.2d 719, 723 (7th Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 315 (1974). *See also United States v. Infelice,* 506 F.2d 1358, 1364–65 (7th Cir.), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802 (1974). Since this precise issue is not raised by the case before us today, we express no opinion regarding it.

6. 36 Fed.Reg. 7776 (1971). Actually, the schedules had been republished approximately one month earlier, on March 13, 1971, together with a comprehensive set of Justice Department regulations implementing the Act. 36 Fed.Reg. 4928 (1971). In response to various objections and comments on the proposed regulations, several amendments were made and revised regulations were published on April 24. The schedules themselves remained intact through both publications.

7. 21 C.F.R. §§ 308.11–.15 (1972).

8. 37 Fed.Reg. 9545 (1972).

9. 38 Fed.Reg. 953 (1973).

10. 38 Fed.Reg. 9254 (1973). Apparently, this March republication was done to correct the previous January's republication, which may have inadvertently repealed many of the regulations. *See United States v. Monroe,* 408 F.Supp. 270, 272 n.2 (N.D.Cal.1976).

11. 21 C.F.R. §§ 308.11–.15 (1973).

12. The indictment charged that the conspiracy of which Thor was an alleged member had begun on or about October 1, 1972. Thus, the first few weeks of the alleged conspiracy (that is, until October 27, 1972) existed during the six-month period following the republication of the schedules effective April 27, 1972. *See* n.8 *supra* and accompanying text. The indictment also alleged, however, that the conspiracy had continued until December 12, 1972, some six weeks beyond the date when the April republication had lapsed. For the purposes of this case, we are bound to assume that the conspiratorial conduct upon which Thor was convicted occurred after the lapse of the April republication.

purported to relate back to October 27, 1972, and thus to cover the indictment period by a *nunc pro tunc* closing of the gap which had existed since that date.[13] Essentially, it is appellant Thor's contention that the government's failure to republish the schedules on time caused the statute to lapse. If this proposition is valid, then it necessarily follows that the indictment upon which Thor was tried and convicted failed to state an offense against the United States, and thus that the district court was without jurisdiction over the subject matter of the indictment.

## II

Before considering Thor's primary argument, we must initially examine two issues which lie at the periphery of this case. First, Thor argues that the Attorney General's republication of the controlled substances schedules on April 24, 1971, rather than on October 27, 1971, contravened the Act's mandate to republish the schedules "during the two-year period beginning one year after the date of enactment of this subchapter". 21 U.S.C. § 812(a) (1970). In effect, Thor argues that the Attorney General's early republication of the schedules was void, and that accordingly the Act lapsed as of October 27, 1971. This contention is frivolous, and in fact has already been rejected by this court. *United States v. Bass,* 490 F.2d 846 (5th Cir. 1974). Second, the government argues that Thor's failure to assert the instant argument at any prior stage of the proceedings against him—that is, during either his trial or his direct appeal to this court—resulted in a waiver of that argument for the purposes

of this collateral attack upon his conviction. On this score, the government is clearly wrong. If the indictment upon which Thor was tried and convicted failed to allege a federal offense, the district court lacked the subject matter jurisdiction necessary to try Thor for the actions alleged in the indictment. *See* 18 U.S.C. § 3231 (1970). Jurisdictional defects are always subject to attack under section 2255, as that statute expressly states. Accordingly, the matter was properly presented by Thor's section 2255 motion.

Turning, then, to the more substantial issue in this case, we first observe that although Thor's argument has been raised on several occasions in various courts, only two of the Circuit Courts of Appeal—the Ninth [14] and the Tenth [15]—appear to have decided the issue. Both of those decisions are contrary to Thor's position. Upon our careful consideration of those decisions, as well as two thoughtful district court opinions dealing with the issue,[16] we are convinced that those decisions correctly analyze Thor's argument. Accordingly, we are in agreement with those courts, and hold that the failure to republish the schedules in a timely manner did not nullify the schedules. We shall briefly recount the reasons underlying this result.

Reading the Act as a whole, as we are bound to do, we especially note the importance of reading sections 811 and 812 in conjunction with each other. While section 812 sets forth the five schedules of controlled substances and mandates the republication timetable we have described, that section also provides, in subsection (c), that the five schedules "shall, *unless and until*

---

13. As our discussion *infra* indicates, we have assumed (without deciding) that this attempted *nunc pro tunc* republication did not have its intended effect.

14. *United States v. Eddy,* 549 F.2d 108 (9th Cir. 1976). Although a close examination of *Eddy* may indicate that the issue which Thor asserts was not precisely before the court in that case, the court clearly expressed its agreement with two district court opinions—*United States v. Andrews,* 408 F.Supp. 1007 (N.D.Cal.1976) and *United States v. Monroe,* 408 F.Supp. 270 (N.D. Cal.1976)—which did squarely address the is-

sue. 549 F.2d at 111. Under these circumstances, we see no need to distinguish an earlier Ninth Circuit case, *Hotch v. United States,* 212 F.2d 280, 14 Alaska 594 (1954), upon which Thor heavily relies.

15. *United States v. Huerta,* 547 F.2d 545 (10th Cir. 1977).

16. *United States v. Andrews,* 408 F.Supp. 1007 (N.D.Cal.1976); *United States v. Monroe,* 408 F.Supp. 270 (N.D.Cal.1976).

*amended pursuant to section 811 of this title,* consist of the following drugs or other substances . . .." (Emphasis added.) Section 811, in turn, prescribes a procedure for the administrative modification of the content of the schedules—i. e., for the addition or deletion of a substance, or the transfer of a substance from one schedule to another—and establishes both substantive and procedural standards to govern such administrative action. Thus, the Act establishes a scheme for an ongoing administrative evaluation of what substances should be controlled, and to what extent they should be controlled, by delegating to the Attorney General the authority to amend the schedules as the need arises.[17] And in the language of section 812(c), quoted above, the Act states quite clearly that the five schedules "shall . . . consist" of the substances enumerated in the Act at the time of its passage unless the Attorney General amends the schedules pursuant to the elaborate rule-making procedures set forth in section 811.[18]

When one examines the Act's overall scheme with respect to the content of the controlled substances schedules, then, the purpose of section 812(a)'s republication requirement becomes clear. The Congress was aware of the possibility that the schedules could be substantially restructured as a result of the delegation of amendment authority to the Attorney General. Consequently, a periodic, updated compilation of the content of the schedules was provided for in order to ensure a public awareness of any alterations. As we construe the Act, this was all that section 812(a) was intended to do.

Thor, however, would have us accord section 812(a) a far greater effect. Essentially, he urges us to adopt a position that would allow the Attorney General to repeal the schedules *in toto* simply by electing not to republish them. Such a position contra-

dicts the intent of Congress, as we perceive it, in two respects. First, it ignores the elaborate administrative procedures prescribed in section 811, which procedures were clearly intended to accompany any administrative modification of the schedules. Second, and more significantly, it ignores the plain language of section 812(c), which demands that the schedules remain intact "unless and until amended" pursuant to section 811 procedures. Consequently, we must conclude that Thor's argument is without merit.

In passing, we note that a different context might compel a different result. For example, should the Attorney General *add* a substance to the schedules, and should the publication of that action be defective in some material respect, then those without notice of the Attorney General's actions might suffer intolerably prejudicial effects. Of course, we intimate no opinion regarding any particularized set of circumstances; we mention this possibility only by way of comparison with Thor's situation, which involved substances which had been controlled under the Act since its inception.

### III

For the reasons set forth, we conclude that the district court properly dismissed Thor's section 2255 motion. Accordingly, that court's order is

AFFIRMED.

---

17. The procedures by which the Attorney General may alter the schedules are discussed extensively in the legislative history of the Act. *See* H.Rep. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin. News pp. 4566, 4569, 4599–4604.

18. Which, in turn, invokes the procedural safeguards of the Administrative Procedure Act. *See* 21 U.S.C. § 811(a) (1970).