**Jesse J. ARRINGTON, Appellant,**

v.

**UNITED STATES, Appellee.**

**and**

**Anthony BURNETTE, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 89–637, 89–638, 89–736 and 89–737.**

District of Columbia Court of Appeals.

Argued Nov. 6, 1990.
Decided Jan. 28, 1991.

James J. Fishel, appointed by this court, for appellants.

Diane M. Munson, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, and Thomas J. Tourish, Jr., Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and TERRY, Associate Judges.

ROGERS, Chief Judge:

These appeals challenge the validity of the District of Columbia Controlled Substances Act, D.C.Code §§ 33–501 *et seq.* (1988) (the Act), on the grounds that the Act became invalid when the Mayor failed to republish the schedules of controlled substances as required by D.C.Code § 33–523 (1988), and is unconstitutionally vague. Appellant Arrington also contends that the trial judge erred in denying his motion to withdraw his guilty plea since the judge failed to ask individual questions about each of the constitutional rights that would be waived by his plea.

We hold that appellants' statutory challenge fails in view of the intent of the Council of the District of Columbia to require republication only when revisions are made to the schedules. Finding the other claims meritless, we affirm their convictions.[1]

I

D.C.Code § 33–523 (1988) provides:

The Mayor shall revise and republish the schedules semiannually for 2 years from August 5, 1981, and thereafter annually. The published schedules may include the brand or trade names of the substances controlled.

▆ Appellants contend that the plain language of the Act is unambiguous, and, consequently, the Mayor's failure to republish the schedules semiannually and annually as required caused the schedules to become invalid. They maintain, moreover, that the absence from Schedule II of the

1. Appellants were convicted for distribution of Schedule II controlled substances. Appellant Arrington was indicted on December 12, 1984, for distribution of phenmetrazine (preludin) on December 10, 1984, and found guilty by a jury. He did not appeal his conviction. However, when his probation was revoked, he appealed. Appeal No. 89–638. He also appeals from the denial of his motion to dismiss an indictment returned on November 13, 1988, charging him with distribution of hydropmorphone (dilaudid) on October 11, 1988, having entered a conditional plea of guilty while reserving his right to challenge the validity of the statute on appeal. Appeal No. 89–637.

Appellant Burnette was indicted on January 15, 1987, and entered a plea of guilty to distribution of cocaine committed on December 4, 1986. Like Arrington, he did not file a direct appeal but appeals from the revocation of his probation, asking the trial court to vacate his sentence under D.C.Code § 23–110, because the statute was not properly in force at the time of his alleged offense, due to the lack of republication. Appeal No. 89–737. He also pleaded guilty to a second charge of distribution of cocaine on November 1, 1987, for which he was indicted on November 10, 1987. He appeals from the denial of his motion to vacate his sentence, pursuant to D.C.Code § 23–110, on the ground that the statute is invalid. Appeal No. 89–736.

phrase "unless and until amended," or similar language as appears in the other schedules and in the federal statute, also makes clear that the failure to republish, even in the absence of any revision, caused the listed substances in the previously published schedules to cease to be "controlled substances," D.C.Code § 33–501(4), and hence their convictions must be reversed.[2]

■■■ In interpreting a statute, the court has often indicated that reliance on the "plain language" of the statute may not suffice when to do so would produce a result that is contrary to the intent of the legislature. Thus, in *Carpenter v. United States*, 475 A.2d 369 (D.C.1984), the court, in examining the same statute at issue here, looked beyond the literal language of the Act to the "shape of the statute as well as to its legislative history." *Id.* at 373.[3] The same approach was taken in *Corbin v. United States*, 481 A.2d 1301 (D.C.1984), in determining the meaning of the Act.[4] In view of the court's determination that the meaning of the word "shall" is not always a mandatory command, but may be directory,[5] it is appropriate for the court to follow a similar analysis here. *See Peoples Drug*

*Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C.1983) (en banc) (although words in statute may be superficially clear, the court "may refuse to adhere strictly to the plain wording of a statute in order 'to effectuate the legislative purpose,' as determined by a reading of the legislative history or by an examination of the statute as a whole") (citations omitted).

The Act, which became effective August 5, 1981, was designed "to achieve a greater degree of uniformity between federal laws, District laws and the laws of those states which have enacted uniform controlled substance laws" and to "clearly identify those substances which are to be subject to control." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 4–123, THE DISTRICT OF COLUMBIA UNIFORM CONTROLLED SUBSTANCES ACT OF 1981, at 1 (1981) (REPORT). Unlike prior statutes, which had employed cumbersome procedures for altering the lists of controlled substances, the Act authorized the Mayor to add or delete controlled substances from the various schedules in the Act so that the District of Columbia could respond promptly to outlaw newly identified dangerous

---

**2.** The government's contention that only appellant Arrington has, in Appeal No. 89–637, preserved this issue for appeal, is meritless. Appellants' challenge to the validity of the Act, that the statute had become invalid and ceased to exist, raises a jurisdictional issue. In the absence of a valid statute their prosecutions could not be maintained under the Act. Challenges to a court's subject matter jurisdiction cannot be waived. *See* Super.Ct.Crim.R. 12(b)(2); *see also Gooding v. United States*, 529 A.2d 301, 304 n. 4 (D.C.1987); *Adair v. United States*, 391 A.2d 288, 290 (D.C.1978); *Smith v. United States*, 304 A.2d 28, 31 (D.C.), *cert. denied*, 414 U.S. 1114, 94 S.Ct. 846, 38 L.Ed.2d 741 (1973). The government's reliance on *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), is misplaced. While a guilty plea cannot generally be collaterally attacked, the Supreme Court recognized an exception "where on the face of the record the court had no power to enter the convictions or impose the sentence." *Broce, supra*, 488 U.S. at 569, 109 S.Ct. at 762. *See also Menna v. New York*, 423 U.S. 61, 63, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975) (per curiam).

**3.** In *Carpenter*, the court interpreted the phrase "unless listed in another schedule" so as to avoid the literal meaning that unless listed in

more than one schedule a listed substance was not a controlled substance under the Act. The court viewed "[t]he wording of the statute [to be] anomalous." *Id.*

**4.** In *Corbin*, the court rejected the claim that the reference in D.C.Code § 33–516(4) to "compound" or "mixture" required that possession of a mixture of two controlled substances constituted only one offense. 481 A.2d at 1302.

**5.** *See, e.g., JGB Properties, Inc. v. District of Columbia Office of Human Rights*, 364 A.2d 1183, 1186 (D.C.1976) (the word "shall" held to be directory, as opposed to mandatory, language when directed to the performance of a duty by a public official). *See also Wisconsin Ave. Nursing Home v. District of Columbia Comm'n on Human Rights*, 527 A.2d 282, 286 (D.C.1987); *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095 (D.C.1986); *M.B.E., Inc. v. Minority Business Opportunity Comm'n*, 485 A.2d 152, 155 n. 1 (D.C.1984); *Vann v. District of Columbia Bd. of Funeral Directors and Embalmers*, 441 A.2d 246 (D.C.1982). These cases have employed a balancing test, weighing the prejudice to a particular litigant against the public interest in the official performing his or her duties.

substances.[6] REPORT at 5. Since its enactment, contrary to the statements in the briefs of the parties on appeal, the Mayor has republished portions of the schedules on five occasions, beginning in February 1985.[7]

The legislative history makes clear that the republication requirement was designed to keep the public apprised whenever changes were made to the listings of controlled substances in the schedules. The Report of the Judiciary Committee states that "[t]he results of these changes in the scheduling of substances would be published semi-annually for two years and thereafter annually." *Id.* This could be read to suggest that republication was required regardless of whether the schedules were changed in any way. In its analysis of the provision enacted and codified as D.C.Code § 33–523, however, the Report explained that:

> [This section] provides for the publication by the Mayor of revised schedules twice a year for 2 years and thereafter annually. These revised schedules shall contain *all the administrative changes made by the Mayor within each period* and may also include the trade or brand names of the substances controlled. The use of

brand names is to be encouraged since it will enable both law enforcement officials and the general public to identify the substances controlled more easily.

*Id.* at 23 (emphasis added).

The D.C. Council apparently contemplated that the Mayor would revise the schedules within a fairly short time after the Act became effective. Under such circumstances, the Council called for prompt publication. Appellants have not suggested, much less proffered, and we have not found any indication, that the Mayor revised any of the schedules before 1985. Nothing in the legislative history remotely suggests that the failure of the Mayor to republish unrevised schedules, much less revised schedules, would have the effect of legalizing or making lawful the possession, use, manufacture, distribution, and the like, of controlled substances in previously published schedules.[8] Moreover, appellants have not suggested that they were not on notice at the time of their offenses that the drugs involved were controlled substances under the Act.[9]

Appellants contend, however, that because language in the federal act,[10] provid-

---

6. D.C.Code § 33–511(a) (1988) (formerly § 33–411(a)) provides in relevant part:
 The Mayor shall administer this act and, with provision for public notice and comment, may add substances to or delete or reschedule all substances enumerated in the schedules
 . . . .
 28 D.C.Reg. 3084 (July 10, 1981). The Act requires the Mayor to consider specified factors in deciding to place a controlled substance on a schedule. *See* D.C.Code §§ 33–513, –515, –517, –519, –521.

7. The first notice of emergency and proposed rule making was published in the D.C. Register on July 13, 1984. 31 D.C.Reg. 3437–38. No comments were received and thereafter minor changes were made. 32 D.C.Reg. 1097 (Feb. 22, 1985). The occasion was to add the drug "Sufentanil Citrate" to Schedule II following approval of its use for anesthesia by the U.S. Food and Drug Administration on May 5, 1984. *Id.* In accordance with D.C.Code § 33–511(b) (1984 Cum.Supp.), the Mayor submitted a copy of the proposed rule making on November 19, 1984, to the Council of the District of Columbia for review, and upon expiration of the 60–day review period without Council action, gave notice of final rule making on February 22, 1985. *Id.*

Since then notice of final rule making has occurred on November 7, 1986, revising Schedule V, 33 D.C.Reg. 6908, and July 10, 1987, revising Schedule V, 34 D.C.Reg. 4370. On June 9, 1989, a complete listing of all controlled substances on all of the schedules was published. 36 D.C. Reg. 4223.

8. We need not and do not decide the legal effect of a prosecution based on a controlled substance added to a schedule which is not republished at the time of the offense.

9. The first notice of emergency and proposed rule-making, which resulted in the addition of sufentanil citrate to Schedule II, was published prior to appellant Arrington's indictment on December 12, 1984, for distribution of preludin. Thus, had he examined the schedules, he would have concluded that Schedule II remained as enacted and published in 1981, with the addition of sufentanil citrate as the only proposed change. Appellants' other offenses occurred after the 1985 publication.

10. Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(a)(1) (1988).

ing that the schedules shall remain in effect "unless and until amended," does not appear in Schedule II of the Act, the D.C. Council must have intended that the failure to republish Schedule II would result in its invalidation. We disagree.

Six federal circuit courts of appeal have rejected republication arguments similar to that advanced by appellants.[11] The "unless and until" language was relied upon by the Fifth Circuit in *Thor, supra* note 11, 554 F.2d at 763, as a signal that Congress did not intend automatic repeal in the event of non-publication. But the language was not the touchstone of the court's analysis, which focused instead on the statute as a whole:

> [w]hen one examines the Act's overall scheme with respect to the content of the controlled substances schedules, then the purpose of section 812(a)'s republication

requirement becomes clear. The Congress was aware of the possibility that the schedules could be substantially restructured as a result of the delegation of amendment authority to the Attorney General. Consequently, a periodic, updated compilation of the content of the schedules was provided for in order to ensure a public awareness of any alterations. As we construe the Act, this was all that section 812(a) was intended to do.

554 F.2d at 763. This interpretation is no less applicable to the local statute. *See* REPORT at 1, 3 (a key goal of the legislation involved "achiev[ing] a greater degree of uniformity between federal laws, [and] District laws" and enactment "would bring the law of the District of Columbia into substantial conformity with the federal law in this area").

11. *United States v. Rosa*, 562 F.2d 205, 206 (2d Cir.1977) (per curiam), *cert. denied*, 434 U.S. 1048, 98 S.Ct. 895, 54 L.Ed.2d 799 (1978) ("the clear intent of Congress was that the schedules should remain as initially adopted until changed by the Attorney General. It is impossible to believe, particularly in the case of a drug such as heroin, that Congress intended the narcotics business to be decriminalized if the Attorney General failed to perform an administrative duty."); *Thor v. United States*, 554 F.2d 759, 762 (5th Cir.1977) ("[T]he failure to republish the schedules in a timely manner did not nullify the schedules."); *Urdiales v. United States*, 559 F.2d 273, 274 (5th Cir.1977) (per curiam), *cert. denied*, 434 U.S. 1071, 98 S.Ct. 1253, 55 L.Ed.2d 774 (1978) (same); *United States v. Pedote*, 557 F.2d 596, 596 (7th Cir.1977) (per curiam) (same); *Lewis v. United States*, 555 F.2d 1360, 1362 n. 2 (8th Cir.1977) (per curiam) ("Even though there appears to have been a technical failure to timely republish the schedules ... we subscribe to the view that 'Congress [in adopting § 812] did not intend republication to serve as a reissuance of the schedules, which if done improperly would cause those schedules to lapse and expire.' Section 812 is directory, so that each schedule remains in effect until it is actually revised."); *United States v. Huerta*, 547 F.2d 545 (10th Cir.1977) ("We are convinced that the clear intent of Congress was that the schedules should remain as initially adopted until changed by action of the Attorney General. The required republication of the schedules was to keep the public advised of any changes that had been made in the schedules."); *United States v. Gonzales–Palma*, 645 F.2d 844 (10th Cir.), *cert. denied*, 454 U.S. 861, 102 S.Ct. 316, 70 L.Ed.2d 159 (1981) (same). Only the Seventh Circuit has suggested that republication of the entire schedule was required in the absence of any revision.

*United States v. Nocar*, 497 F.2d 719, 722–23 (7th Cir.1974) (defendant's statutory challenge failed because duty to republish had not yet ripened at the time the offenses were committed).

Cases on which appellants rely are not to the contrary, but simply do not reach the issue of the effect of non-republication since the duty to publish had not yet ripened. *United States v. Mundt*, 508 F.2d 904 (10th Cir.1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975); *United States v. Nocar*, 497 F.2d 719 (7th Cir.), *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 315 (1974); *United States v. Infelice*, 506 F.2d 1358 (7th Cir.1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802 (1975); *United States v. Grummel*, 542 F.2d 789 (9th Cir. 1976) (per curiam), *cert. denied*, 429 U.S. 1051, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977); *United States v. Eddy*, 549 F.2d 108 (9th Cir.1976); *United States v. Monroe*, 552 F.2d 860 (9th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977). Further, in each of these circuits subsequent decisions hold that the statute remained valid despite a failure to republish. *See United States v. Rosa*, 562 F.2d 205, 206 (2d Cir.1977) (per curiam), *cert. denied*, 434 U.S. 1048, 98 S.Ct. 895, 54 L.Ed.2d 799 (1978); *Thor, supra*, 554 F.2d at 762; *Urdiales v. United States*, 559 F.2d 273, 274 (5th Cir.1977) (per curiam), *cert. denied*, 434 U.S. 1071, 98 S.Ct. 1253, 55 L.Ed.2d 774 (1978); *United States v. Pedote*, 557 F.2d 596, 596 (7th Cir.1977) (per curiam); *Lewis v. United States*, 555 F.2d 1360, 1362 n. 2 (8th Cir.1977) (per curiam); *United States v. Lustig*, 555 F.2d 737 (9th Cir.), *cert. denied*, 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977); *United States v. Huerta*, 547 F.2d 545 (10th Cir.1977); *United States v. Gonzales–Palma*, 645 F.2d 844 (10th Cir.1981).

"Unless and until" language appears in Schedules I, III, IV and V of the Act,[12] and the government has suggested that the absence of such language in Schedule II, not mentioned in the legislative history, appears to have been an oversight. This seems a likely explanation since there is nothing to suggest that the D.C. Council intended the failure to republish Schedule II to cause the listed substances to cease to be "controlled substances" under the Act.

■ Accordingly, we hold that under D.C.Code § 33–523, the Mayor is required to republish a schedule of controlled substances whenever the Mayor revises it by adding or subtracting a controlled substance,[13] and that since appellants' convictions involve controlled substances in Schedule II, which was published in 1981 and in 1985 when it was revised, their convictions were not invalidated pursuant to the republication requirement.[14]

■ We further hold that appellants' vagueness contention is meritless. Appellants provide no analysis for their claim that the Act is void for vagueness. Since Schedule II was published listing the controlled substances underlying appellants' convictions, there is no risk of lack of notice of violative conduct; nor does the Act vest the police with unreasonable discretion. *See Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988); *Grayned v. City of Rockford*, 408 U.S. 104, 107–08, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). The Act, therefore, lacks the flaws which underlie the successful vagueness claims in the cases relied on by appellants. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); *see also United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

### III

Finally, Arrington contends that the trial judge erred in denying his presentence motion to withdraw his guilty plea. He maintains that he did not understand the rights he would be waiving because the judge failed to ask "individually understandable" questions. Specifically, he complains that he did not understand the question in which the judge lumped together all of the constitutional rights that would be waived upon entering a plea. Although the waiver-of-rights question was long, in the absence of any record protest by Arrington or his counsel during or shortly after the Rule 11 inquiry, we conclude that the trial judge did not err in denying the motion.

■ While presentence motions to withdraw a guilty plea are looked upon more favorably than post-sentencing motions, *Jordan v. United States*, 350 A.2d 735, 737 (D.C.1976), to succeed a defendant must demonstrate that either the Rule 11 inquiry was defective in some non-technical way or that "justice demands withdrawal in the circumstances of the individual case." *See Gooding v. United States*, 529 A.2d 301, 305 (D.C.1987) (on rehearing) ("fair and just" standard); Super.Ct.Crim.R. 32(e).

---

**12.** The Act includes, in all schedules other than Schedule II, republication language that is nearly identical to the federal act. *See* D.C.Code § 33–515, quoted, *supra*. *See also* note [6], *supra*. Section 812(a) of title 21 of the U.S.Code provides in relevant part:

The schedules established by this section shall be updated and republished on a semiannual basis during the two-year period beginning one year after October 27, 1970, and shall be updated and republished on an annual basis thereafter.

Like the Mayor, the Attorney General is authorized to "add to such a schedule or transfer between such schedules any drug or other substance" when certain conditions have been met. 21 U.S.Code § 811(a)(1) (1988). Similarly, the Attorney General is authorized to "remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule." *Id.* at § 811(a)(2).

**13.** The Report of the Judiciary Committee also refers to republication when the Mayor makes administrative changes to a schedule. Presumably, this would occur when the brand or trade name of a drug changed, for example. Accordingly, consistent with the Council's intent, republication would be required when there are administrative changes to the schedules.

**14.** All acts and legal proceedings involved in the present case occurred after the July, 1984, notice indicating that Schedule II was to be revised. *See supra* note 7.

The judge's question to Arrington about whether he understood that upon pleading guilty he would waive eight different constitutional rights covers two and one-half pages of transcript. Truly, this is a very long question. By contrast, the judge's Rule 11 inquiry was otherwise phrased in short-question form. Even with the lengthy waiver-of-rights question, however, the inquiry shares none of the defects that we have identified to require withdrawal of a guilty plea.[15]

 The trial judge asked all of the required questions. Arrington did not file his motion to withdraw his plea until two months after he pled guilty, and then only after he filed a motion for reconsideration of the denial of his motion to dismiss the indictment. He did not and does not now claim that he is innocent. He was 37 years old at the time of his plea, and he was not a newcomer to the criminal justice system.[16] He was represented by counsel at the Rule 11 inquiry and he engaged in a series of responses to the judge's questions before the waiver-of-rights question.[17] Under the circumstances, see *Gooding v. United States, supra,* 529 A.2d at 306–07 (identifying factors in evaluating motion to withdraw a guilty plea), we conclude that Arrington has not established that the "fair and just" standard demonstrates that he was entitled to withdraw his guilty plea. *Id.* at 307.

Accordingly, the judgments are affirmed.

15. *See Williams v. United States,* 408 A.2d 996, 998 (D.C.1979) (judge failed adequately to explore whether any promises had been made to the defendant); *Hawkins v. United States,* 385 A.2d 744 (D.C.1978) (judge inquired only whether the defendant had signed the written jury waiver form; "at least some oral statement" from the defendant must accompany a written waiver). *See also Byrd v. United States,* 377 A.2d 400, 404 (D.C.1977) (judge's urgings to defendant to enter a guilty plea "cross[ed] the fine line that demarcates advice from coercion").

16. The government agreed not to file repeat papers upon Arrington's entry of a plea. The Pretrial Services Agency report indicated that he had three prior convictions for drugs and shoplifting, and that he was on probation at the time of his arrest.

17. During a subsequent inquiry, the judge clarified that Arrington was entering a conditional plea that would allow him to appeal the denial of his motion to dismiss the indictment on the ground that the Act was invalid.