Marcus SNELL, Appellant,

v.

UNITED STATES, Appellee.

No. 11–CF–571.

District of Columbia Court of Appeals.

Submitted Sept. 25, 2012.
Decided March 28, 2013.

Christine Pembroke, Washington, was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, and Mary B. McCord, John G. Giovannelli, Lauren H. Dickie, and John L. Hill, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN, BLACKBURNE-RIGSBY and OBERLY, Associate Judges.

OBERLY, Associate Judge:

Marcus Snell was convicted of five gun-related charges stemming from an incident on the evening of July 4, 2010: unlawful possession of a firearm (felon-in-possession); carrying a pistol without a license outside one's home or place of business (felony CPWL); unlawful discharge of a firearm; possession of an unregistered firearm (UF); and unlawful possession of ammunition (UA).[1] On appeal, he challenges all of these convictions on several grounds. He first argues that his conviction under D.C.Code § 22–4504 ("the CPWL statute") cannot be sustained because that statute has been rendered "ineffective" in light of the District of Columbia Council's repeal, in 2009, of the statutory provision for granting licenses to carry pistols. Second, Snell makes several merger arguments. Third, he argues that the government's failure to turn over Jencks Act material denied him a fair trial.

---

1. D.C.Code §§ 22–4503(a)(1); –4504 (2001); –4503.01 (Supp.2009); 7–2502.01, – 2506.01 (2001).

Finally, Snell argues that the evidence presented at trial about two firearms rather than just one constituted a constructive amendment of the indictment, which did not specify the use of two firearms. We reject Snell's arguments and affirm the judgment of the Superior Court.

## FACTS

On July 4, 2010, Joy Winslow was sitting on a porch with friends and family, including Snell, watching children set off fireworks. According to Winslow, a physical altercation broke out, which Snell tried to break up. He became agitated and pulled out a black pistol and fired it into the air. Stanley Dawson, a neighbor, confronted Snell about firing the pistol in the presence of children. Snell left but returned later that night and told Winslow that someone had just stolen his gun.

Around midnight, apparently after Snell had been robbed, Dawson's aunt, Jacqueline McCoy, was sitting on her front porch when Snell approached and demanded to know where Dawson was. McCoy testified that Snell was carrying a silver pistol and, after repeatedly shouting, pointed it into the air, threatening to shoot. McCoy went inside to call 911; while she was on the phone with the 911 operator, she heard shots being fired outside.

At Snell's trial on the gun charges, he stipulated to the fact that he had no registration certificate for any firearm or ammunition and no license to carry a pistol. At the close of the evidence, the trial judge gave the jury a unanimity instruction, stating: "[Y]ou must all agree that [Snell] either committed the first incident with Miss Winslow or the second incident that Miss McCoy described or you can conclude that he committed both." The jury found

Snell guilty of UA and unlawful discharge, based on the first incident with Winslow, and guilty of felon-in-possession, UF, and CPWL, based on the second incident with McCoy.

## DISCUSSION

### I. The Validity of the CPWL Statute

■ Snell was charged with felony CPWL ("CPWL outside the home"): carrying a pistol without a license "in a place other than the person's dwelling place, place of business, or on other land possessed by the person." D.C.Code § 22–4504(a)(1). An element the government must prove in all CPWL prosecutions is that the carrying was done without a license. *See McCullough v. United States,* 827 A.2d 48, 58 (D.C.2003). The government does not dispute that at the time Snell committed the offense, there no longer was a regulatory scheme in the District for people to obtain licenses to carry pistols. In 2008, as part of its response to the Supreme Court's decision in *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the D.C. Council repealed D.C.Code § 22–4506 (2001), the statute giving the Chief of Police authority to issue licenses to carry pistols under certain circumstances, and did not replace it with any new licensing scheme. Inoperable Pistol Amendment Act of 2008, D.C. Law 17–388 (codified at D.C.Code § 22–4504.01(1) (Supp.2010)). In repealing D.C.Code § 22–4506, the Council left D.C.Code § 22–4504 ("the CPWL statute") unchanged, and at the time Snell was charged with CPWL in 2010, the Council had done nothing to amend the statute in light of the repealed licensing provision.[2] Snell thus argues

2. Three years after it repealed the licensing provision, the D.C. Council passed a law to "remove outdated language regarding the

granting of licenses to carry weapons." Firearms Amendment Act of 2012, D.C. Law 19–170 (effective September 26, 2012). The Fire-

that he cannot be convicted of violating a statute with which, he contends, it was technically impossible to comply.[3]  *See* WAYNE R. LAFAVE, CRIMINAL LAW § 6.2(c) (5th ed.2003) ("one cannot be criminally liable for failing to do an act that he is physically incapable of performing"); *Port Huron v. Jenkinson*, 77 Mich. 414, 43 N.W. 923, 924 (1889) ("No legislative or municipal body has the power to impose the duty of performing an act upon any person which it is impossible for him to perform, and then make his non-performance of such duty a crime."); *Arrington*, 585 A.2d at 1344 n. 2 ("In the absence of a valid statute [a defendant's] prosecution[ ] c[annot] be maintained.").

■ Keeping in mind "'[t]he cardinal principle of statutory construction ... to save and not to destroy,'" *Teachey v. Carver*, 736 A.2d 998, 1004 (D.C.1999) (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937)), we conclude that the Council inadvertently neglected to address the license-requirement language of CPWL when it repealed the licensing provision and that felony CPWL remained a prosecutable offense even after the Council made it impossible to obtain a license.  *Cf. United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1087 (D.C.1997) ("When two statutes are capable of co-existence it is the duty of the courts, absent a clearly expressed legislative intention to the contrary, to regard each as effective.") (alterations and internal quotation marks omitted).  It is clear that when the Council repealed the licensing provision, it did not intend to abolish the prohibition against carrying pistols on the street, an act of particular concern to the Council.[4]

arms Amendment Act of 2012 struck the phrase "without a license issued pursuant to District of Columbia Law" from "wherever it appear[ed]" in the CPWL statute.  *Id.* Without the license-requirement language, D.C.Code § 22–4504(a) now provides: "No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, or any deadly or dangerous weapon capable of being so concealed."  Firearms Amendment Act of 2012, D.C. Law 19–170.  As it had before, subsection (a)(1) of the CPWL statute provides for an enhanced sentence for a person who carries a pistol in a place other than his home or place of business.  *Id.*

3. Because Snell did not challenge the validity of the CPWL statute at trial, we first must determine what standard of review applies to his challenge on appeal.  Snell claims to be making a jurisdictional argument like the one made in *Arrington v. United States*, 585 A.2d 1342 (D.C.1991), in which appellants challenged the validity of the statute under which they were convicted.  We held that appellants' claim was a challenge to the court's subject matter jurisdiction because "[i]n the absence of a valid statute their prosecutions could not be maintained under the Act." *Id.* The government cites *Howerton v. United States*, 964 A.2d 1282 (D.C.2009), to support its argument that Snell's claim can be reviewed only for plain error.  However, unlike the appellant in *Howerton*, 964 A.2d at 1286, whose constitutional challenge to the CPWL statute in light of *Heller* we reviewed for plain error, Snell is not challenging the constitutionality of the CPWL statute.  Rather, he is arguing that the repeal of the District's licensing regulations has rendered the entire statute void, stripping the government of any authority to prosecute him for violating it.  We agree with Snell that his argument is more fairly treated as a challenge to the court's subject matter jurisdiction, which cannot be waived, and we thus review his claim *de novo*.

4. Eliminating the means with which to comply with an element of D.C.Code § 22–4504(a) and neglecting to amend the statute was surely an unintended consequence of the efforts to reform the District's firearms laws in the aftermath of *Heller*.  The CPWL statute was originally enacted by Congress in 1932 for the purpose of "protect[ing] citizens from injury by keeping dangerous weapons off the street." *Ray v. United States*, 620 A.2d 860, 864 (D.C. 1993); *see also Roper v. United States*, 564 A.2d 726, 730 (D.C.1989) (noting that CPWL is "designed to keep such dangerous items off

If we were to sever the license-requirement language from felony CPWL—as the Council eventually did—the "remaining provision[ ], standing alone, [is] fully operative as a law." *McClough v. United States,* 520 A.2d 285, 289 (D.C.1987) (internal quotation marks omitted); *see also* D.C.Code § 45–201(a) (2001). Without the license-requirement language, felony CPWL becomes a blanket prohibition against carrying a pistol outside the home, unless it is registered and being used in compliance with D.C.Code § 22–4504.01 (Supp.2010). The Council would have prohibited—and eventually did prohibit—this conduct without an exception for license-holders, see *supra* notes 2 & 4, and the prohibition does not run afoul of *Heller,* as this court has interpreted it. Although the Council may not institute a wholesale ban on carrying a pistol in one's own home or place of business, *Heller* did not extend one's rights under the Second Amendment to include carrying a pistol outside the home or place of business.[5] *Heller,* 554 U.S. at 626–27, 128 S.Ct. 2783; *see also Gamble v. United States,* 30 A.3d 161, 164–65 (D.C.2011); *Sims v. United States,* 963 A.2d 147, 150 (D.C.2008).

We do not disagree with Snell that genuine impossibility is a defense to a crime of omission, *see* LaFave, Criminal Law § 6.2(c), but felony CPWL is not a crime of omission. Although the absence of a license is an element the government must prove in CPWL prosecutions, the gravamen of the offense of felony CPWL is the act of carrying a pistol outside the home, not the failure to get a license. Thus, Snell *could have* complied with felony CPWL simply by not carrying a pistol on the street, outside his home.[6]

the street"); *Logan v. United States,* 402 A.2d 822, 825 (D.C.1979) ("Congress' goal [in enacting CPWL] was to prevent an individual from carrying an unlicensed pistol on the street because of the danger that such a person would pose to the community as a result (1) of the inherent dangerousness of the weapon he carried, and (2) of the absence of any evidence of his capability to carry safely such a dangerous instrumentality.") (internal quotation marks and footnote call omitted). In the Inoperable Pistol Amendment Act of 2009, which repealed the licensing provision, the Council also omitted operability as an element of CPWL, reasoning that, "[i]n general, persons should not be carrying real weapons on the street regardless of operability." Council of the District of Columbia, Comm. on Pub. Safety and the Judiciary, Rep. on B. 17–593, at 3 (2008).

5. Whether one has a Second Amendment right to carry a gun outside the home for the purpose of self-defense is an open question in the District. *See (Manuel) Brown v. United States,* 979 A.2d 630, 642 (D.C.2009) (recognizing the possibility that the Second Amendment may protect one's right to carry a gun outside the home in self-defense). In any case, there was no evidence that on July 4, 2010, Snell carried a gun for the purpose of self-defense. We also note that without the license-requirement language, misdemeanor CPWL, D.C.Code § 22–4504(a) is questionable after *Heller* because it requires the government to prove only that one carried a gun without a license, regardless of whether he carried it in his own home or place of business. *See Plummer v. United States,* 983 A.2d 323, 341 (D.C.2009); *Howerton v. United States,* 964 A.2d 1282, 1289 (D.C.2009). In other words, without the license-requirement language, misdemeanor CPWL prohibits carrying a pistol even in one's own home. This prohibition is also at odds with the Code provision added by the Inoperable Pistol Amendment Act of 2008, which authorizes registered firearm owners to carry their registered firearms in their home. *See* Inoperable Pistol Amendment Act of 2008, D.C. Law 17–388 (codified at D.C.Code § 22–4504.01(1) (Supp.2010)).

6. *Cf. United States v. Carmel,* 548 F.3d 571, 579 (7th Cir.2008) (holding that defendant could have complied with statute prohibiting possession of unregistered firearms "simply by declining to possess ... illegal machine guns," which could not be registered because they could not legally be possessed); *United States v. Grier,* 354 F.3d 210, 214–15 (3d Cir.2003) (same); *United States v. Bournes,* 339 F.3d 396, 399 (6th Cir.2003) (same);

## II. Merger Arguments

### A. Merger of CPWL

■ Snell makes three arguments for why his CPWL conviction merges with some of his other offenses and thus must be vacated. First, he argues that under the *Blockburger*[7] test CPWL merges with UF because proof of CPWL "satisfies all the elements of [possession of an] unregistered firearm" now that the Council has repealed the licensing regulations. This is not so. CPWL does not require proof that the pistol being carried was unregistered and UF does not require proof that the pistol was being carried, a narrower concept than possession. *See Jones v. United States*, 972 A.2d 821, 827 (D.C.2009). The Council may replace the license requirement in CPWL with a registration requirement, but it has yet to do so. *Tyree v. United States*, 629 A.2d 20, 22–23 (D.C. 1993), holding that CPWL and UF do not merge, still governs.

■ Snell next contends that under the rule of lenity, he should not have been sentenced to consecutive terms for felon-in-possession and CPWL in the absence of clear legislative intent to sentence consecu-

tively for each offense. "The rule of lenity operates to prohibit consecutive sentences when a single act or transaction constitutes two criminal offenses, *unless* (1) the offenses are separate and distinct, and (2) there is a clear legislative intent to provide for consecutive punishment." *Bradley v. United States*, 856 A.2d 1157, 1162 (D.C. 2004) (internal quotation marks omitted). The rule of lenity does not apply here because CPWL and felon-in-possession are "separate and distinct" offenses,[8] and D.C.Code § 23–112 (2001), which codifies the *Blockburger* rule, constitutes "the legislature's clear ... intent to provide consecutive sentences" for CPWL and UF.[9] *See Bradley*, 856 A.2d at 1163; *Byrd v. United States*, 598 A.2d 386, 389 (D.C. 1991).

Finally, Snell argues that CPWL is the functional equivalent of a lesser-included offense of felon-in-possession. In *Byrd*, we held that the offense of receipt of stolen property should be treated as the functional equivalent of a lesser-included offense of theft for purposes of interpreting the statute, which specifically prohibited consecutive sentences for theft and unau-

*United States v. Elliott*, 128 F.3d 671, 672 (8th Cir.1997) (same); *Hunter v. United States*, 73 F.3d 260, 261–62 (9th Cir.1996) (same); *United States v. Ardoin*, 19 F.3d 177, 179–80 (5th Cir.1994) (same); *United States v. Jones*, 976 F.2d 176, 183 (4th Cir.1992) (same). *But cf. United States v. Dalton*, 960 F.2d 121, 124 (10th Cir.1992) (reversing conviction for possession of unregistered machine gun, holding that a conviction for a crime that "ha[s] as an essential element [the defendant's] failure to do an act that he is incapable of performing" violates due process).

7. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

8. Each requires proof of a fact that the other does not. Felon-in-possession requires proof that the defendant has a prior felony conviction (CPWL does not), and CPWL requires proof that the defendant carried the pistol (felon-in-possession does not). *See Washington v. United States*, 53 A.3d 307 (D.C.2012).

9. D.C.Code § 23–112 provides: "A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the same transaction and requires proof of a fact which the other does not."

thorized use of a motor vehicle. 598 A.2d at 391. In the absence of such legislative intent to prohibit consecutive sentences for various firearms offenses, we apply the Council's general intent to sentence consecutively as embodied in D.C.Code § 23–112.

## B. Merger of UA

■ Snell also argues that his conviction for UA merges with unlawful discharge. Snell contends that UA requires only proof of knowing possession of ammunition[10] and because it is impossible to discharge a firearm without possessing ammunition, proof of unlawful discharge satisfies all elements of UA. Although the typical scenario underlying an unlawful discharge offense would involve possession of ammunition, possession of ammunition is not an element of unlawful discharge, and we agree with the government that it is possible to discharge a firearm without possessing the discharged ammunition. Therefore, UA and unlawful discharge do not merge.

## III. Jencks Act Claim

■ Snell argues that the government violated the Jencks Act, 18 U.S.C. § 3500(b) (2006), by not turning over statements that McCoy had made to a police officer after the murder of McCoy's nephew, Stanley Dawson, who was killed a few days after the July 4 incident. Snell further contends that the trial court erred in not sanctioning the government for this violation and in not striking McCoy's testimony. At trial, during cross-examination when it became clear that McCoy had spoken to a police officer, Snell's counsel objected to not having received any Jencks Act statements. The government produced the police officer who had interviewed McCoy, Andre Martin, for examination outside the presence of the jury. Officer Martin explained that McCoy came to talk with him about her nephew's murder and Snell's aggressive behavior toward her nephew days earlier. On a sheet of paper Officer Martin had recorded McCoy's name and telephone number and Snell's name and address but had taken no statement from McCoy about her observations. Officer Martin passed on the information to Detective Green, who was investigating the murder, and subsequently misplaced the sheet of paper. Detective Green's notes, which were turned over to the defense prior to trial, incorporated the information contained in Officer Martin's notes.

"The Jencks Act requires that once a government witness has testified on direct examination, on defendant's motion, the government must disclose 'any statement [as defined in the Act] of the witness in the possession of the United States which relates to the subject matter to which the

---

**10.** Snell cites *Logan v. United States,* 489 A.2d 485 (D.C.1985), for the proposition that UA requires only proof of knowing possession and not proof of lack of registration. In *Herrington v. United States,* 6 A.3d 1237 (D.C. 2010), we invalidated the UA statute, as construed in *Logan,* insofar as it made proof of registration an affirmative defense. Because "[a] UA conviction ... may be based solely on proof that the defendant possessed handgun ammunition in his home—solely, that is, on proof of conduct protected by the Second Amendment" as articulated in *Heller*—we held that "the prosecution may assume the burden of charging and proving beyond a reasonable doubt that the defendant lacked the necessary registration in order to satisfy the Second Amendment." *Id.* at 1243, 1245. Although it was decided after the end of Snell's trial, *Herrington* applies to Snell's UA conviction because it was decided when Snell's case was pending on appeal and not yet final. *See Lancaster v. United States,* 975 A.2d 168, 172–73 n. 2 (D.C.2009). Although the court's instructions to the jury on the elements of UA did not include an instruction to find that Snell lacked a registration certificate for ammunition, Snell stipulated to the fact that he did not have a registration certificate for ammunition.

witness has testified.'" *Robinson v. United States*, 825 A.2d 318, 325–26 (D.C.2003) (quoting 18 U.S.C. § 3500(b)). Assuming, without deciding, that the information in Officer Martin's notes from his interview with McCoy qualified as a statement under the Act and should have been produced, there was no prejudice to Snell in this case because the substance of Officer Martin's notes [11]—Snell's name and address and McCoy's name and phone number—was incorporated into Detective Green's notes, which were turned over to the defense prior to trial. *See Moore v. United States*, 353 A.2d 16, 18 (D.C.1976) ("Documents which substantially incorporate notes or records of oral statements of a witness may satisfy the production requirements of the Act depending on the reliability of the reporting process and the absence of prejudice to the defendant."). There was thus no need to sanction the government or to strike McCoy's testimony.

### IV. Constructive Amendment

■ Finally, Snell claims that the government constructively amended his indictment by putting on evidence of two guns when the indictment did not specify that two firearms were at issue. At trial, when the government presented stipulations regarding the lack of registration certificates for two guns, Snell's counsel expressed his surprise at learning that the government intended to put on evidence of two guns. Snell's counsel was primarily concerned that evidence of two guns would confuse the jury, and the remedy he sought—and was granted—was a special unanimity instruction. Although Snell's counsel objected to the government's putting on evidence of two guns, he did not "assert with specific precision" his constructive amendment claim. *Perkins v. United States*, 760 A.2d 604, 609 (D.C.2000) (internal quotation

marks omitted). We thus review Snell's claim for plain error. *Id.; (Danny Lee) Johnson v. United States*, 812 A.2d 234, 242 (D.C.2002).

■ "[A] constructive amendment occurs when the trial court permits the jury to consider, under the indictment, an element of the charge that differs from the specific words of the indictment." *(Oliver) Johnson v. United States*, 613 A.2d 1381, 1384 (D.C.1992) (internal quotation marks omitted). "[T]o evaluate whether an indictment has been constructively amended, the court must compare the evidence and the instructions to the jury with the charge specified in the indictment" and determine "whether [any] inconsistency between the indictment and the proof went to an essential element of the offense." *Carter v. United States*, 826 A.2d 300, 304 (D.C. 2003) (internal quotation marks omitted).

There was no inconsistency between the indictment—referring to firearm in the singular—and the evidence at trial of more than one firearm because the elements for each charged offense remained the same. Rather, this case was appropriately resolved with the court's unanimity instruction because each count "encompasse[d] two (or more) factually separate criminal incidents" and the jury was required to "reach unanimous agreement as to a particular incident in order to find the defendant guilty as charged." *Williams v. United States*, 981 A.2d 1224, 1228 (D.C. 2009).

### CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

11. The trial court credited Officer Martin's testimony about the content of his notes, which it was entitled to do, and we see no reason to doubt this credibility determination. *Hilliard v. United States*, 638 A.2d 698, 704 (D.C.1994).