*402 Washington, Chief Judge:
Following a bench trial before the Honorable Florence Y. Pan, appellant T.M. was found delinquent of several charges related to the shooting of seventeen-year-old J.W. On appeal, appellant challenges the sufficiency of the evidence to support her conspiracy conviction, and for the first time, raises a facial challenge to the constitutionality of D.C.’s carrying a pistol statute, D.C. Code § 22-4504(a) (2013), relying primarily on the Supreme Court’s decision in District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and the D.C. District Court’s decision in Palmer v. District of Columbia, 59 F.Supp.3d 173 (D.D.C. 2014). We affirm.
I.
On August 30, 2013, T.M. and a group of more than ten teenagers approached J.W., A.L., B.W., L.L., and S.G. in an alley behind Calvin Coolidge High School following a football game. While in the alley, B.W., J.W., and A.L. identified T.M., who also attended Coolidge High School, as a member of the group of teenagers who approached them. The girls (with the exception of S.G.) testified that they knew T.M. from a prior physical altercation with J.W. the year prior. J.W., A.L., B.W., L.L., and S.G. proceeded to smoke marijuana in the alley and walk towards the Safeway on Georgia Avenue. The group of ten or more teenagers, including T.M., followed them down the alley. A.L. testified that she saw T.M. holding a gun, and “could just tell ... there was something funny.” She also testified that when she turned in the alley, she saw T.M. with her arms extended and pointing the gun towards them, but slightly down to the ground. A.L. and B.W. testified that before the gun was fired, they heard an unidentified male state, “Don’t do it in the light” or “T., if you’re going to shoot it, get out of the light.” As the girls crossed the intersection of Tuck-erman and Seventh Street, they heard a single gunshot and saw J.W. fall to the ground. The bullet penetrated both of J.W.’s legs. A.L., B.W., and S.G. fled to call the police while L.L. remained with the wounded J.W. The group of teenagers with whom T.M. was seen fled the scene as well. An ambulance arrived and transported J.W. to Washington Hospital Center, where she received medical treatment for what doctors identified as a broken right leg.
As a result of this incident, T.M. was charged by a twenty-two-count amended indictment with: (1) two counts of attempted first-degree murder while armed;[1] (2) five counts of attempted second-degree murder while armed;[2] (3) two counts of assault with intent to kill while armed (“AWIKWA”);[3] (4) two counts of assault with intent to commit a murder while armed (“AWIMWA”);[4] (5) one count of aggravated assault while armed (AAWA);[5] (6) four counts of attempted AAWA;[6] (7) one count assault with significant bodily injury (“ASBI”);[7] (8) one count of conspiracy to commit murder or assault with a dangerous weapon;[8] (9) one count of felony *403 carrying a pistol (“CP”);[9] (10) one count of possession of an unregistered firearm (“UP”); [10] (11) one count of unlawful possession of ammunition;[11] and (12) one count of discharge of a weapon.[12] At the close of trial, appellant’s counsel moved for judgment of acquittal, which was granted as to the attempted first-degree murder while armed, attempted second-degree murder while armed, AWIKWA, and AWIMWA charges, because the government failed to establish the element of intent. On October 31, 2013, the Honorable Florence Y. Pan found appellant delinquent on all remaining counts. On February 5, 2014, appellant was sentenced by the trial court to one year probation. Appellant timely appealed.
II.
A. Sufficiency of the Evidence
Appellant argues that the evidence presented at trial was insufficient to sustain her conviction for conspiracy to commit murder or assault with a dangerous weapon because the government failed to prove that an agreement was formed between T.M. and the other members of the group present at the scene of the incident.
This court reviews a challenge for sufficiency of the evidence “in the light most favorable to the government, giving full play to the right of the [fact finder] to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence.” Gathy v. United States, 754 A.2d 912, 917 (D.C. 2000) (citation omitted). “The evidence is insufficient when the government produces no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.” Bolanos v. United States, 938 A.2d 672, 677 (D.C. 2007) (citation and internal quotation omitted).
The conspiracy statute, D.C. Code § 22-1805a(a)(l),[13] requires the government to prove that appellant: (1) made “an agreement between [one] or more people to commit a criminal offense; (2) knowingly] and voluntar[il]y participated] in the agreement ... with the intent to commit a criminal objective; and (3) commissioned] in furtherance of the conspiracy at least one overt act ... during the conspiracy.” Campos-Alvarez v. United States, 16 A.3d 954, 965 (D.C. 2011).
In this case, the trial court drew the following inferences from the government’s evidence, stating:
It can be inferred from the words that were used that there was some prior discussion of what was going to happen and that the group that the respondent allegedly was with knew what she was doing based on the statements that were made and then advice was given as to how she should commit the act.
Referencing the advice given to T.M. by the unidentified male at the scene, the trial court went on to state:
*404 I think that this clearly wasn’t her acting alone in that she arrived with a group of people, received encouragement and advice from that group of people. They clearly had been discussing it before she fired the gun, based on the statements that were made, and then they all fled afterward.
Drawing from these inferences and the evidence presented at trial, the trial court found that appellant’s conduct satisfied the elements of conspiracy.
Appellant alleges that the trial court relied on nothing more than speculation to satisfy the requirements of D.C. Code § 22-1805a because the evidence presented at trial was insufficient to prove T.M. knowingly participated in an agreement to accomplish the assault against J.W., a necessary element of conspiracy. Notwithstanding this contention, we are satisfied that the inferences drawn by the trial court were reasonable deductions supported by the record. In reaching this conclusion, we look instructively to Mitchell v. United States, 985 A.2d 1125, 1135 (D.C. 2009), and McCoy v. United States, 890 A.2d 204, 214 (D.C. 2006).
In Mitchell, this court concluded that where appellants simultaneously emerged from behind a dumpster while openly wielding guns and followed the victims down the street on foot, there was no need for direct evidence of agreement and the trial court could permissibly infer from “a development and collocation of circumstances” that appellants formed an agreement to murder the victims. Mitchell, 985 A.2d at 1135 (citation and internal quotation omitted). Similarly, in McCoy, we held where appellants intentionally followed the victim’s car, and one appellant shouted instructions at the other to drive the car in close range of the victim’s car, the jury could have reasonably found an agreement existed between the appellants to carry out the shooting. McCoy, 890 A.2d at 211, 214.
In this case, the trial court was permitted to draw the same inferences from events preceding the shooting to support her finding of conspiracy. While “mere presence or awareness is insufficient to make out a conviction for ... conspiracy,” id. at 211, the trial court in this case found that T.M. arrived in the alley with a large group of teenagers, waited for J.W. and her friends, and promptly followed them down the alley. The evidence also showed that T.M. was openly carrying a weapon when she was seen amongst the group of teenagers and at least one member of the group continued to follow her and advise her on how to carry out the shooting. The statement made by the unidentified male member of the group, advising T.M. not to “do it” in the light, could reasonably indicate that the individual had knowledge of T.M.’s plan to shoot at J.W. and her friends, and intended to help T.M. carry out the overt act without detection. Much like the instruction given to the appellant in McCoy, the advice given to T.M. moments before the shooting could reasonably indicate that the person speaking had knowledge of what “it” — T.M.’s plan to shoot J.W. — was, and thus the person attempted to dissuade T.M. from openly carrying and shooting the gun and intended to participate by walking with and advising T.M. on how to evade detection.
Thus, based on the evidence presented by the government, in conjunction with the reasonable inferences drawn by the trial court, we conclude that there was sufficient evidence to prove that appellant conspired to commit the assaultive act against J.W. and her friends.
B. Facial Constitutionality of
*405 D.C. Code § 22-4504(a)[14]
Next, appellant raises a facial constitutional challenge to the carrying a pistol statute, under which she was found delinquent. We review appellant’s constitutional challenge for plain error where, as here, the challenge is raised for the first time on appeal. See Conley v. United States, 79 A.3d 270, 276 (D.C. 2013). Under the test for plain error, appellant must show error, that is “plain,” that affected her substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings. See Lowery v. United States, 3 A.3d 1169, 1173 (D.C. 2010) (citing In re D.B., 947 A.2d 443, 450 (D.C. 2008)) (internal quotation marks omitted); see also United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
Citing District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and Palmer v. District of Columbia, 59 F.Supp.3d 173 (D.D.C. 2014),[15] appellant asserts that the trial court’s failure to sua sponte prohibit the enforcement of the 2013 version of D.C. Code § 22-4504(a)(1) (“CP statute”) constitutes plain error.
In order to prevail on a facial challenge to a statute under plain error review, appellant must demonstrate that: (1) the CP statute was unconstitutional on its face,[16] and thus its enforcement against appellant was error; (2) the constitutional infirmities of the statute were “clear and obvious” at the time of adjudication and/or at the time of appellate review; (3) the enforcement of the statute affected appellant’s substantial rights; and (4) the fairness, integrity and public reputation of the judicial proceedings were affected by the error.
In this case, even assuming that the statute was facially unconstitutional, we are satisfied that appellant cannot show that the error was “clear and obvious” either at the time of trial or at the time of appellate review.
The 2012 version of the CP statute created a complete restriction on carrying a *406 pistol outside of one’s home, with or without a license.[17] See Firearms Amendment Act of 2012, 2012 District of Columbia Laws 19-170 (“D.C. Official Code § 22-4504(a) is amended by striking the phrase ‘without a license issued pursuant to District of Columbia law,’ wherever it appears.”).
Referencing Heller as the controlling authority, appellant asks this court to conclude, for the first time, that the Second Amendment prohibits the District of Columbia from enacting a total ban on the possession of a firearm outside of the home. While appellant seems to assert that this conclusion is clearly supported by the Supreme Court’s interpretation of the Second Amendment in Heller and its subsequent application by the District Court in Palmer, this court in Sims v. United, States illuminated the unsettled posture of the discussion in this court:
Important questions about the reach of Heller remain to be answered, but what assuredly is not “clear” and “obvious” from the decision is that it dictates an understanding of the Second Amendment which would compel the District to license a resident to carry and possess a handgun outside the confines of his home, however broadly defined.
Sims v. United States, 963 A.2d 147, 150 (D.C. 2008); see also Snell, 68 A.3d at 693 n.5 (D.C. 2013) (“Whether one has a Second Amendment right to carry a gun outside the home for the purpose of self-defense is an open question in the District.”) (citing Brown v. United States, 979 A.2d 630, 642 (D.C. 2009)).
After the District dismantled the city’s licensing mechanism entirely, the appellant in Snell challenged the constitutionality of the felony carrying a pistol without a license (“CPWL”) statute because it operated as a total ban on carrying pistols in the District of Columbia. Upon reviewing the constitutionality of that statute, this court concluded:
If we were to sever the license-requirement language from felony CPWL — as the Council eventually did — the “remaining provisionf ], standing alone, [is] fully operative as a law.” McClough v. United States, 520 A.2d 285, 289 (D.C. 1987) (internal quotation marks omitted); see also D.C. Code § 45-201(a) (2001). Without the license-requirement language, felony CPWL becomes a blanket prohibition against carrying a pistol outside the home, unless it is registered and being used in compliance with D.C. Code § 22 — 4504.01 (Supp. 2010). The Council would have prohibited — and eventually did prohibit — this conduct without an exception for license-holders, see supra notes 2 & 4, and the prohibition does not run afoul of Heller, as this court has interpreted it. Although the Council may not institute a wholesale ban on carrying a pistol in one’s own home or place of business, Heller did not extend one’s rights under the Second Amendment to include carrying a pistol outside the home or place of business.
Snell, 68 A.3d at 693.
Given the state of this court’s case law on the issue, what is clear to us is that at *407 the time of trial, had the trial court surveyed the state of the pertinent case law, it would not have found a clear and definitive answer to the question of Heller ⅛ reach. Thus, we conclude that the trial court did not plainly err in failing to prohibit the enforcement of the CP statute at trial where it was neither clear nor obvious that the statute was unconstitutional. We now turn to the plainness of the error at the time of appellate review.
Appellant relies alternatively on the D.C. District Court’s decision in Palmer, which held that the 2012 construction of the CP statute was in fact unconstitutional on its face. Palmer, 59 F.Supp.Bd at 183. However, a trial court decision, while persuasive, does not carry the same weight as that of an appellate court decision on the same subject. For that reason, we are not convinced that the district court’s decision in Palmer is sufficient, authority from which this court could conclude that the statute violated appellant’s constitutional rights where there exists contrary authority by our court. More importantly, the U.S. District Court relied primarily on Peruta v. County of San Diego, 742 F.3d 1144 (9th Cir. 2014), in support of its decision in Palmer. However, Peruta was subsequently overturned by the Ninth Circuit, en banc. In its opinion, the Circuit held that the Second Amendment “does not preserve or protect a right of a member of the general public to carry concealed firearms in public.” Peruta v. County of San Diego, 824 F.3d 919, 924 (9th Cir. 2016), cert. granted sub nom. Peruta v. California (U.S. Jan. 17, 2017) (No. 16-894). Thus, any weight that this court would have given to the district court’s interpretation of Heller in Palmer is now significantly less persuasive.
Alternatively, appellant argues that the impropriety of the statute was plain at the time of appeal given the statute’s incon-gruences with constitutional legal principles. While this court, in Conley, acknowledged that “the plainness of the error can depend on well-settled legal principles as much as well-settled legal precedents” and such “trial judges are presumed to know and apply the legal principles enunciated in appellate decisions,” Conley, 79 A.3d at 290, we do not find that appellant’s inferences from Heller, or subsequent cases interpreting the Second Amendment, constitute “well-settled legal principíete]” which establish that the right extends outside of the home.
In Conley, this court reviewed, for plain error, a facial challenge of D.C. Code § 22-2511, which made it a “a felony offense for a person to be present in a motor vehicle if the person knows that the vehicle contains a firearm, even if the person has no connection to or control over the weapon and is not involved in any wrongdoing whatsoever.” Id., 79 A.3d at 272. There, we concluded that the error was clear, given that the statute violated “fundamental principles of due process ... that were settled long before appellant’s trial.” Id. at 290 (finding an unconstitutional shift in the burden of persuasion to the defense with respect to an es.sential element of the offense). Unlike the statute we reviewed in Conley, however, nothing in the plain language of D.C. Code § 22-4504(a)(l) appears to violate core and well-settled due process principles that should havé put the trial court on notice that the statute’s enforcement violated constitutional norms.
Therefore, the question before us is whether the law is well settled enough to have made it clear and obvious to the trial court that enforcement of D.C. Code § 22-4504(a)(1) violated appellant’s Second Amendment right to bear arms. After reviewing this court’s casé law cited above and the case law of other jurisdictions, we are satisfied that the language of the stat *408 ute was not so clearly and obviously unconstitutional as to support reversal on plain error grounds. See United States v. Masciandaro, 638 F.3d 458, 467 (4th Cir. 2011) (“A considerable degree of uncertainty remains as to the scope of [the Heller ] right beyond the home and the standards for determining whether and how the right can be burdened by governmental regulation.”); see also Kachalsky v. County of Westchester, 701 F.3d 81, 89 (2d Cir. 2012) (“What we know from [Heller and McDonald v. City of Chicago, Ill., 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) ] is that Second Amendment guarantees are at their zenith within the home .... What we do not know is the scope of that light beyond the home and the standards for determining when and how the right can be regulated by a government.”) (citation omitted).
III.
Because it is unclear whether D.C. Code § 22-4505(a) (2012 Repl.) violates appellant’s Second Amendment rights and because the evidence presented at trial was sufficient to sustain appellant’s conviction for conspiracy to commit the assault on J.W., we affirm appellant’s convictions and remand the case solely for the trial court to address those convictions that merge.[18]

So ordered.

Opinion by Associate Judge Beckwith, concurring in part and dissenting in part, at page 408.

. D.C. Code §§ 22-1803, 22-2101, 22-4502 (2012 Repl.).

. D.C. Code §§ 22-1803, 22-2103, 22-4502 (2012 Repl.).

. D.C. Code §§ 22-401, 22-4502 (2012 Repl.).

. Id.

. D.C. Code §§ 22-404.01, 22-4502 (2012 Repl.).

. D.C. Code §§ 22-404.01, 22-1803, 22-4502 (2012 Repl.).

. D.C. Code § 22-404(a)(2) (2012 Repl.).

. D.C. Code § 22-1805a (2012 Repl).

. D.C. Code § 22-4504(a)(l) (2012 Repl.).

. D.C. Code § 7-2502.01 (2013).

. D.C. Code § 7-2506.01(a)(3) (2013).

. D.C. Code § 22-4503.01 (2012 Repl.); 24 DCMR § 23001.1.

. "If 2 or more persons conspire either to commit a criminal offense or to defraud the District of Columbia or any court or agency thereof in any manner or for any purpose, each shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned not more than 5 years, or both, except that if the object of the conspiracy is a criminal offense punishable by less than 5 years, the maximum penalty for the conspiracy shall not exceed the maximum penalty provided for that offense.” D.C. Code § 22-1805a(a)(l).

. "(a) No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon. Whoever violates this section shall be punished as provided in § 22-4515, except that: (1) A person who violates this section by carrying a pistol, without a license issued pursuant to District of Columbia law or any deadly or dangerous weapon, in a place other than the person’s dwelling place, place of business, or on other land possessed by the person, shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned for not more than 5 years, or both.” D.C. Code § 22-4504 (current statute) (the “without a license” provision was added in 2012).

. In Palmer v. District of Columbia, 59 F.Supp.3d 173 (D.D.C. 2014), appeal dismissed, No. 14-7180, 2015 WL 1607711 (D.C. Cir. Apr. 2, 2015), the D.C. District Court reached the issue of the constitutionality of D.C. Code § 22-4504(a), D.C.’s ban on the carrying of a pistol outside of the home, for the first time since its amendment. Interpreting District of Columbia v. Heller, the district court held that the “text and history” of the Second Amendment indicated an intent to protect “carrying” outside of the home for self-defense, as well. Following this analysis, the district court concluded that the District of Columbia’s statutory ban on carrying a pistol was an unconstitutional infringement on the Second Amendment, by creating a restriction on the lawful use upon which the right was premised, specifically self-defense.

.To demonstrate that the terms of a statute are facially unconstitutional, appellant must show that "measured against the relevant constitutional doctrine, and independent of the constitutionality of particular applications, [the statute] contain[s] a constitutional infirmity that invalidates the statute in its entirety.” Conley, 79 A.3d at 277.

. The Firearms Amendment Act of 2012 struck the phrase "without a license issued pursuant to District of Columbia Law” from "wherever it appear[ed]” in the CPWL statute. Without the license-requirement language, D.C. Code § 22-4504(a) provided: "No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, or any deadly or dangerous weapon capable of being so concealed.” Firearms Amendment Act of 2012, D.C. Law 19-170. See also Snell v. United States, 68 A.3d 689, 691 n.2 (D.C. 2013); Wrenn v. District of Columbia, 107 F.Supp.3d 1, 3-4 (D.D.C. 2015) (for legislative history).

. Appellant’s conviction for felony assault (also called assault with significant bodily injury or “ASBI”) merges with her conviction for AAWA because felony assault is a lesser-included offense of AAWA. See Medley v. United States, 104 A.3d 115, 132 (D.C. 2014) ("ASBI is a lesser-included offense of aggravated assault.”). Additionally, appellant’s four convictions for attempted AAWA merge with her conviction for AAWA against J.W., because all four attempt convictions originated from one single assaultive act, the shooting of the weapon. The government does not contest the merger of these convictions. Thus, we vacate appellant’s four convictions for attempted AAWA and felony assault (ASBI). Because this case involves a juvenile, there is no need to remand because the sentence will not be affected. See In re T.H.B., 670 A.2d 895, 903 (D.C, 1996) ("When a juvenile is found guilty of two or more criminal offenses, the court does not sentence that juvenile separately on each count as it would sentence an adult. Rather, an adjudication of delinquency is a single, unitary judgment.”) (citing D.C. Code § 16-2320 (c) (1989); Super. Ct. Juv. R. 32 (b)).